## AMERICAN BISCUIT & MANUF'G CO. *v.* KLOTZ *et al.*

*(Circuit Court, E. D. Louisiana. January 8, 1891.)*

**RECEIVERS—COMBINATIONS TO RESTRAIN TRADE.**

Defendant and his partner sold their bakery business to complainant corporation, receiving payment in its stock, and defendant leased to it the premises where the business was conducted, and contracted to carry it on as the purchaser's agent, for a salary. After operating under this arrangement for a time, he repudiated the sale, resumed possession under the old firm name, and refused to account to complainant. The bill was brought to enjoin him from asserting a hostile claim, for an accounting, and a receiver. Defendant, and his partner as intervenor, filed a cross-bill for rescission of the sale for fraudulent representations, and tendered back the stock. Complainant was practically a "trust," organized to monopolize the business, and had already secured control of 35 leading bakeries in 12 different states. *Held* that, while a case was made for a receiver, pending litigation between ordinary parties, the prayer would be denied, as equity would not encourage a combination in restraint of trade, and probably illegal, under Act Cong. July 2, 1890, "to protect trade and commerce against unlawful restraints and monopolies," and Act La. July 5, 1890, for the same purpose.

In Equity.

*T. J. Semmes* and *Bayne, Denegre & Bayne*, for complainant.

*W. S. Benedict* and *Rouse & Grant*, for defendants.

Before PARDEE and BILLINGS, JJ.

PER CURIAM. This cause is submitted upon an application for a receiver. Some time in May last, the defendant Klotz, and Fitzpatrick, his partner, composing the firm of B. Klotz & Co., sold to the complainant their biscuit and confectionery manufactory for the price of $259,-000, and an assumption of the debts of B. Klotz & Co., amounting to $42,000, which it was understood and agreed should be paid out of the income from the future business. The visible property was estimated to be of the value of $101,000, and the good-will of the business to be of the value of $200,000. The price was paid in stock of the complainant's corporation, estimated to be of value at par; that is, to be worth

100 cents on the face value. The purchase was completed, price paid, property delivered, the factory and good-will transferred by Klotz & Co. to the complainant. Klotz leased his bakery premises to complainant for the term of years, and contracted in writing to become, and did become, the agent of the complainant, at a salary of $——— per year. Klotz continued to carry on the business as agent for the complainant down to some time in November, when he repudiated the sale and the lease, erased the name of complainant from the bakery, as agent, transferred the policies of insurance from the complainant to himself, as an individual, then to B. Klotz & Co., and, for and in the name of the late firm, resumed the possession of all the property he had sold to the complainant, and the conduct of the business of the bakery and the confectionery establishment. He did this without resort to any legal proceedings. He thereafter held possession adversely to the complainant, and excluded it from the bakery. In this state of things, the complainant filed its bill for an injunction, and for an account and for a receiver, against Klotz and W. A. Schall, who was alleged to be co-operating with him in the possession adverse to the complainant. Klotz has filed an answer, and he, together with his former partner, Fitzpatrick, who intervened by petition *pro interesse suo*, have filed a cross-bill asking a rescission of the entire transaction, *i. e.*, the sale and the lease, and tendering the stock which had been received by them as the consideration of the sale. Numerous exhibits and affidavits have been adduced by each party upon this hearing. The recital thus given shows that, in an order inverted from what would be expected, we have before us a cause in which a party who has sold and delivered a business to another, and become his agent, and, as such agent, was in possession of the property sold, sets up a possession adverse to his principal, asks for a cancellation of the sale, and the purchaser and principal asks that the agent shall account, shall be enjoined from asserting any claim hostile to his principal,—in a word, for a confirmation of its rights under the purchase.

The immediate question before us is, what disposition shall be made of the *res*, the business of the bakery and manufactory, pending this contest? The vendor and agent asks that he be allowed to remain in adverse possession. The purchaser and principal asks for a receiver. It is clear that, as to this provisional disposition of the *res*, the defendant Klotz cannot be allowed to gain anything by his ouster of his vendee and principal. He must stand with those equities, and none other, which existed before the ouster. The case as to the appointment of a receiver must be reviewed and determined as if he (Klotz) had filed his bill averring possession as agent, which he asked to have changed by a decree into a possession as owner, through the cancellation of the sale and the lease; that is, he must aver a legal title in the American Biscuit & Manufacturing Company, which he seeks to have avoided and annulled. If, as in this case, he seeks to do all this by reason of fraud, and he establishes the fraud, a court of equity will not refuse to hear him. He would not be estopped, for fraud vitiates and sets aside even estoppels. Herm. Estop. par. 22, p. 244; *Pendleton* v. *Richey*, 32 Pa.

St. 58, 63. But, while he is not estopped from proceeding to set aside the sale and the lease by reason of his agency and his obligations as trustee, he comes into court assailing and seeking to cancel a legal title; for until that is done his possession is that of the complainant. Under these circumstances, until the hearing, the practice in the courts of chancery is not to disturb the possession under the legal title prior to the final decree, unless a case of·monstrous wrong is established. *Stilwell* v. *Wilkins*, Jac. 280, reported in full in Edwards on Receivers, p. 28, Lord ELDON, when a similar question was presented, observed:

"The point that struck me was whether, on a bill to impeach a sale for fraud, the court interposes so strongly before the hearing as to take away the possession from persons holding it under the effect of deeds not yet set aside by decree."

—And he holds that "it was not the general habit of the court." There the case was so monstrous, and the proof was so strong, that "it was hardly possible that the transaction could stand," and the legal title was interfered with.

This is a leading case, and gives what we find is the rule. The possession under the title is not disturbed unless the proof of fraud is so strong as to lead the court to the clear conviction that it will, on the final hearing, be established. The fraud set up and relied upon by the defendant and intervenor is false and fraudulent representations by the agents of the complainant in this: that they represented that the stock was fully paid-up stock, whereas, in truth and fact, it was none of it paid up in money, and only paid up in part,·and, to the extent of that part, by transfer of plants or bakeries and manufactories at an estimated value as capital. The stock delivered to the defendant and intervenor was not paid up until it was issued to them, and was paid for by a transfer of the bakery and good-will; and then it became paid up, and they were discharged from all liability to be made to contribute as shareholders therefor. The testimony as to what was represented by complainant's agents about the stock being paid up is conflicting; but, when viewed in connection with the circumstances under which the stock was received, fails to satisfy us, upon this preliminary hearing, that any false representations are proved to have been made. The case of the defendant and intervenor, set up in their cross-bill, whereby they oppose the appointment of a receiver, is that of parties who seek to rescind a deed on the ground of fraud, which upon this hearing they fail to establish.

So far we have considered the question of appointing a receiver of the property in controversy *inter partes*, and mainly from the stand-point presented by the defendant's showing, and thereon such appointment seems proper, and we should accord it, but for an aspect of the case originally suggested by the defendant, when the case was pending in the state court, apparently abandoned here, but sufficiently brought to our notice by the exhibits of both parties. We are not satisfied that the complainant's business is legitimate. While the nominal purpose of the complainant's corporation, as stated in its charter, is the manufacture and

sale of biscuit and confectionery, its real scope and purpose seems to be to combine and pool the large competing bakeries throughout the country into practically what is known and called a "trust," the effect of which is to partially, if not wholly, prevent competition, and enhance prices of necessary articles of food, and secure, if not a monopoly, a large control, of the supply and prices in leading articles of breadstuffs. The case shows that an insignificant number of shares of complainant's stock was unconditionally subscribed for, apparently enough to qualify directors; but the great mass was taken and held by irresponsible parties, to be used in parceling out as full-paid stock to such leading and successful bakeries throughout the country as could be induced to come in on an agreed value of the property and a large estimate of good-will. Each bakery when secured to be carried on by its former managers, subject, however, as to control of funds, territory, prices, and competition, to the central management; all profits pooled, and of course division thereof to be made on the basis of the stock assigned to each bakery. Under this arrangement complainant has already secured the control, and pooled the business, of 35 of the leading bakeries in 12 different states of the west and south, and is evidently seeking more constituents. The act of congress approved July 2, 1890, entitled "An act to protect trade and commerce against unlawful restraints and monopolies," expressly prohibits, under severe penalties, "every contract, combination, in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states," and declares punishable "every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons to monopolize, any part of the common trade or commerce among the several states." The enforcement of this act is, by the statute, devolved upon the circuit courts of the United States. The first and third sections of an act of the legislature of Louisiana, approved July 5, 1890, entitled "An act to protect trade and commerce against unlawful restraints and monopolies, and to provide penalties for the violation of this act," declare:

"Section 1. That every contract, combination in the form of trust, or conspiracy in restraint of trade or commerce, or to fix or limit the amount or quantity of any article, commodity, or merchandise to be manufactured, mined, produced, or sold in this state, is hereby declared illegal."

"Sec. 3. That every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons to monopolize, any part of the trade or commerce within the limits of this state, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by a fine not exceeding five thousand dollars, or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court."

In construing the federal and state statutes, we exclude from consideration all monopolies which exist by legislative grant; for we think the word "monopolize" cannot be intended to be used with reference to the acquisition of exclusive rights under government concession, but that the law-maker has used the word to mean "to aggregate" or "concentrate" in the hands of few, practically, and, as a matter of fact, and according to the known results of human action, to the exclusion of oth-

ors; to accomplish this end by what, in popular language, is expressed in the word "pooling," which may be defined to be an aggregation of property or capital belonging to different persons, with a view to common liabilities and profits. The expression in each law "combination in the form of trust" would seem to point to just what, in popular language, is meant by pooling.

Now it is to be observed that these statutes outline an offense, but require for its complete commission no ulterior motive, such as to defraud, etc.; and, further, that the language is altogether silent as to what means must be used to constitute the offense. The offense is defined to "combine in the form of trust, or otherwise, in restraint of trade or commerce," and "to monopolize, or attempt to monopolize, any of the trade or commerce." To compass either of these things, with no other motive than to compass them, and by any means, constitutes the offense. One just and decisive test of the meaning of the expression "to monopolize" is obtained by getting at the evil which the law-maker has endeavored to abolish and restrict. The statutes show that the evil was the hindrance and oppression in trade and commerce wrought by its absorption in the hands of the few, so that the prices would be in danger of being arbitrarily and exorbitantly fixed, because all competition would be swallowed up, so that the man of small means would find himself excluded from the restrained or monopolized trade or commerce as absolutely as if kept out by law or force. If this is the meaning of the defining words, does not this corporation, thus glutted with the 35 industries of 12 states, disclose an "attempt to monopolize?" So far, therefore, as the complainant's business is a combination in restraint of trade, or is an "attempt to monopolize, or combine, in the form of a trust, or otherwise, any part of trade or commerce," as these words are properly defined, the law stamps it as unlawful, and the courts should not encourage it. Aside from this, the complainant's business, even if lawful, being of the kind shown above, is not of that meritorious kind that it should be encouraged by a court of equity. The appointment of a receiver by a court of equity is not a matter of strict right, but of judicial discretion. *Fosdick* v. *Schall*, 99 U. S. 235. It falls within that class of interlocutory remedies which courts must grant or withhold, according to a discretion conscientiously exercised, upon a consideration of all the facts which a cause presents, involving the rights of the parties and the interests of the public. The attempt to accumulate in the hands of a single organization the business of supplying bread itself to so large a portion of the poor, as well as the rich, people of the United States should not be favored by a court of equity. It carries with it too much of danger of excluding healthy competition, thereby increasing the difficulty to the general public of participating in a most useful business, as well as adding to the possibility of multitudes of citizens being temporarily, at least, compelled to pay an arbitrary and high price for daily food.

Whatever we may feel compelled to do, on the final hearing of this cause, towards recognizing the complainant's legal rights, and compelling a faithless trustee to account, we are clear that at this preliminary stage,

with our present impressions of the character and general scope of complainant's business, the court ought not, by the appointment of a receiver, to aid complainant to perfect, and perhaps to enlarge, his combination or trust; and the refusal to appoint a receiver can result in no serious and lasting injury to complainant, because the shares of stock of complainant company, forming the entire consideration of complainant's purchase, have been tendered in court, and may be impounded, to be held as security for any damages susceptible of proof resulting from defendant's mismanagement of the property pending the suit. The motion for a receiver is denied.