## UNITED STATES v. E. C. KNIGHT CO. et al.

(Circuit Court, E. D. Pennsylvania. January 30, 1894.)

MONOPOLIES—INTERSTATE COMMERCE—SUGAR TRUST.

> Act Cong. July 2, 1890, declares "every contract, combination in the form of a trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states or with foreign nations" illegal; prohibits any person from attempting to monopolize, or combining or conspiring with any other person to monopolize, any part of the trade or commerce among the several states, or with foreign nations; and invests the circuit courts with jurisdiction to restrain violations of the act. *Held*, that a combination whose object is to enable a single company to monopolize and control the business of refining and selling sugar, by buying up all competing concerns in the United States, is not in violation of this statute; for it constitutes no restriction upon, or monopoly of, commerce between the states, but, at most, only makes it possible for the promoters of the combination to restrict or monopolize such commerce, should they so desire.

Ellery P. Ingham, U. S. Atty., and Robert Ralston, Asst. U. S. Atty. John G. Johnson and R. C. McMurtrie, for defendants.

BUTLER, District Judge. The bill charges, in substance, as follows:

E. C. Knight Company, Spreckels' Sugar Refining Company, Franklin Sugar Refining Company and the Delaware Sugar House, were, until on or about March 4, 1892, independently engaged in the manufacture and sale of refined sugar. · That they were competitors with the American Sugar Refining Company and with one another; and that they were engaged in trade with the several states and with foreign nations. That the American Sugar Refining Company had, prior to March 4, 1892, obtained the control of all the sugar refineries in the United States, with the exception of the Revere, of Boston, and the refineries of the said four defendants. That the Revere produced annually about 2 per cent., and the said four defendants about 33 per cent. of the total amount of sugar refined in the United States. That in order that the American Sugar Refining Company might obtain complete control of the production and price of refined sugar in the United States, it and John E. Searles, Jr., acting for it, entered into an unlawful and fraudulent scheme to purchase the stock, etc., of the said four defendants by which they attempted to obtain control of all the sugar refineries in this district for the purpose of restraining the trade thereof among the other states. That in pursuance of this scheme, on or about March 4, 1892, John E. Searles, Jr., entered into a contract with the defendant Knight Company and individual stockholders named for the purchase of all the stock of the said company, and subsequently delivered to the said defendants in exchange therefor shares of the American Sugar Refining Company. That on or about the same

time the said Searles entered into a similar contract with the Spreckels Company and individual stockholders and made a similar contract with the Franklin Company and stockholders and with the Delaware Sugar House and stockholders.

The bill further avers that the American Sugar Refining Company monopolizes the manufacture and sale of refined sugar in the United States and controls the price of sugar. That in making the said contracts the said Searles and the American Sugar Refining Company combined and conspired with the other defendants named to restrain trade and commerce in refined sugar among the several states and foreign nations. That the said contracts were made with intent to enable the said American Sugar Refining Company to monopolize the manufacture and sale of refined sugar among the several states.

The material facts proved are that the American Sugar Refining Co., one of the defendants, is incorporated under the laws of New Jersey and has authority to purchase, refine, and sell sugar; that the Franklin Sugar Refinery, the E. C. Knight Company, the Spreckels Sugar Refinery, and the Delaware Sugar House, were incorporated under the laws of Pennsylvania, and authorized to purchase, refine and sell sugar; that the four latter Pennsylvania companies were located in Philadelphia, and prior to March, 1892, produced about 33 per cent. of the total amount of sugar refined in the United States, and were in active competition with the American Sugar Refining Company and with each other, selling their product wherever demand was found for it throughout the United States; that prior to March, 1892, the American Sugar Refining Company had obtained control of all refineries in the United States, excepting the four located in Philadelphia, and that of the Revere Company in Boston, the latter producing about 2 per cent. of the amount refined in this country; that in March, 1892, the American Sugar Refining Company entered into contracts (on different dates) with the stockholders of each of the Philadelphia corporations named, whereby it purchased their stock, paying therefor by transfers of stock in its company; that the American Sugar Refining Company thus obtained possession of the Philadelphia refineries and their business; that each of the purchases was made subject to the American Sugar Refining Company obtaining authority to increase its stock $25,000,-000; that this assent was subsequently obtained and the increase made; that there was no understanding or concert of action between the stockholders of the several Philadelphia companies respecting the sales, but that those of each company acted independently of those of the others, and in ignorance of what was being done by such others; that the stockholders of each company acted in concert with each other, understanding and intending that all the stock and property of the company should be sold; that the contract of sale in each instance left the sellers free to establish other refineries and continue the business if they should see fit to do so, and contained no provision respecting trade or commerce in sugar, and that no arrangement or provision on this subject has been made since; that since the purchase, the Delaware Sugar House Refinery

has been operated in conjunction with the Spreckels Refinery, and the E. C. Knight Refinery in connection with the Franklin, this combination being made apparently for reasons of economy in conducting the business; that the amount of sugar refined in Philadelphia has been increased since the purchases; that the price has been slightly advanced since that event, but is still lower than it had been for some years before, and up to within a few months of the sales; that about 10 per cent. of the sugar refined and sold in the United States is refined in other refineries than those controlled by the American Sugar Refining Company; that some additional sugar is produced in Louisiana and some is brought from Europe, but the amount is not large in either instance.

The object in purchasing the Philadelphia refineries was to obtain a greater influence or more perfect control over the business of refining and selling sugar in this country.

Are the defendants' acts, as above shown, prohibited by the statute of 1890, relating to trade and commerce? The provisions involved are as follows:

Section 1. Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, is hereby declared to be illegal. Every person who shall make any such contract or engage in any such combination or conspiracy, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by a fine not exceeding five thousand dollars, or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court.

Sec. 2. Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several states, or with foreign nations, shall be deemed guilty of a misdemeanor, and on conviction thereof, shall be punished by fine not exceeding five thousand dollars, or, by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court.

Sec. 4. The several circuit courts of the United States are hereby invested with jurisdiction to prevent and restrain violation of this act; and it shall be the duty of the several district attorneys of the United States, in their respective districts, under the direction of the attorney general, to institute proceedings in equity to prevent and restrain such violations. Such proceedings may be by way of petition setting forth the case and praying that such violations shall be enjoined or otherwise prohibited. When the parties complained of shall have been duly notified of such petition the court shall proceed, as soon as may be, to the hearing and determination of the case; and pending such petition and before final decree, the court may at any time make such temporary restraining order or prohibition as shall be deemed just in the premises.

The principal questions raised are:

First, do the facts show a contract, combination or conspiracy to restrain trade or commerce, or a monopoly within the legal signification of these terms?

Second, do they show such contract, combination or conspiracy to restrain or monopolize trade or commerce "among the several states or with foreign nations?"

Third, can the relief sought be had in this proceeding?

In the view I entertain the first and third need not be considered. The second must receive a negative answer, and this will dispose of the controversy.

The federal government possesses no jurisdiction over the contracts, business or property of individuals within the states—except to collect revenue for its support. Its powers are derived exclusively from the constitution. It has none other than such as are directly or impliedly conferred by that instrument; and the latter contains no suggestion of authority to intermeddle with such property rights. By the eighth section of article first, congress is empowered "to regulate commerce with foreign nations and among the several states, and with the Indian tribes." In pursuance of this power the statute of 1890 was enacted; and as the terms employed show, congress was duly careful to keep within the limits of its authority. It is "trade and commerce among the several states and with foreign nations" that the statutes seek to guard against restraint or monopoly.

The contracts and acts of the defendants relate exclusively to the acquisition of sugar refineries and the business of sugar refining, in Pennsylvania. They have no reference and bear no relation to commerce between the states or with foreign nations. Granting therefore that a monopoly exists in the ownership of such refineries and business, (with which the laws and courts of the state may deal,) it does not constitute a restriction or monopoly of interstate or international commerce. The latter is untouched, unrestrained and open to all who choose to engage in it. The plaintiff contends, however, that such monopoly in refineries and refining incidentally secures a monopoly of commerce among the states. This position, however, is unsound; the deduction is unwarranted. The alleged control of refining does not of itself secure such commercial monopoly; and at present none exists. The most that can be said is that it tends to such a result; that it might possibly enable the defendants to secure it, should they desire to do so. Whether it would or not depends on their ability with this advantage to control such commerce. They have not tested this ability by attempting to control it, nor shown a disposition to do so. They sell their product, and purchasers may use it in such commerce, or otherwise as they choose. At present the defendants neither have, nor have attempted to secure, such commercial monopoly. As before stated, if they have a monopoly it is in refineries and refining, alone—over which the plaintiff has no jurisdiction. If they should retire from business, close their refineries or devote them to other purposes, the plaintiff could not object. This might and doubtless would indirectly produce some disturbance of or interference with such commerce, but it would not bring the defendants or their property within the jurisdiction of congress. Numerous instances might be cited, where contracts, business arrangements and combinations indirectly affect interstate and international commerce without bringing the parties to them or their property within this jurisdiction. It is the stream of commerce flowing across the states, and between them and foreign nations, that congress is authorized to regulate. To prevent direct interference with or disturbance of this flow alone, was the power granted to the federal government. Congress has therefore no authority over articles of merchandise or their owners, or contracts or combi-

nations respecting them, which have not entered into this stream, or having entered, have passed out. It may prohibit and punish all acts which are intended and directed to restrain or otherwise interfere with or disturb such commerce, but it can go no further. To extend its authority to business transactions which have no direct relation to this commerce, but which may incidentally affect it, and to ownership and rights in property not involved in such commerce, because it may possibly become so involved, would be unwarranted by the terms of the constitutional provision, or the statute,—would draw within the jurisdiction of congress most of the business transactions and property of individuals within the states, and would oust the jurisdiction of the states accordingly. A large proportion of the contracts which men enter into, and of the changes which they make in their business and business relations, may and probably do affect such commerce. The diminution or increase of production in agriculture or manufactures, changes from one branch of business or trade to another, all incidentally tend to this result. State legislation prohibiting or restraining the manufacture or sale of certain articles of merchandise, or increasing their cost by exacting license fees, have the same indirect tendency. Such legislative restraint of the manufacture or sale of poisons and alcoholic liquors, and even the increase in the cost or price of property by taxation, could only be sustained by favor of the federal government, in a different view of its power.

The discussion need not be extended; the question is not new. It was fully considered in a case which arose under the statute—In re Greene, 52 Fed. 104—and the opinion of Jackson, J., (now of the supreme court,) is so clear and satisfactory that I am restrained from quoting what he says only by the desire to be brief. Veazie v. Moor, 14 How. 568, 574; Coe v. Errol, 116 U. S. 517 [6 Sup. Ct. 475]; Kidd v. Pearson, 128 U. S. 1 [9 Sup. Ct. 6],—are to the same effect. The cases of U. S. v. Greenhut, 50 Fed. 469, and In re Corning, 51 Fed. 213, cited by the plaintiff, are in affirmance of this view, rather than against it. Every element of combination and monopoly shown here was averred in the indictments under consideration there. It was held, however, that no offense against the statute was set out, no interference with interstate or international commerce being charged. The cases did not fail through matter of form or technically, but because the facts averred did not constitute an offense against the United States.

In the cases of U. S. v. Jellico Mountain Coal & Coke Co., 46 Fed. 432; Manufacturing Co. v. Klotz, 44 Fed. 721; Dueber Watch Case Manuf'g Co. v. E. Howard Watch & Clock Co., 55 Fed. 851, cited by the plaintiff, this question was not considered or raised.

People v. American Sugar Refining Co., 7 Ry & Corp. (Cal.) 83, and People v. North River Sugar Refining Co., 16 N. Y. Civ. Proc. 1 & 6, [3 N. Y. Supp. 401]; Id., 54 Hun, 354 [7 N. Y. Supp. 406],—were suits in state courts and involved questions of state law, only.

The bill must be dismissed, with costs.