### WITHERELL & DOBBINS CO. v. UNITED SHOE MACHINERY CO.

(Circuit Court of Appeals, First Circuit. June 18, 1919. On Rehearing, November 9, 1920.)

No. 1387.

1. **Pleading ☞8(3)—Averment of illegal combination held a conclusion of pleader.**

   Allegations of answer relative to plaintiff being an illegal combination under Anti-Trust Act July 2, 1890 (Comp. St. §§ 8820–8823, 8827–8830), and the leases of shoe machines sued on being direct and material parts of the combination and themselves illegal, *held* mere conclusions of pleader.

2. **Pleading ☞8(3)—Averment of transaction in interstate commerce held a conclusion.**

   Relative to leases of shoe machinery being transactions in the course of interstate commerce, which alone are made unlawful by Clayton Act Oct. 15, 1914, § 3 (Comp. St. § 8835c), allegation of answer merely that they were made in the course of such commerce is a conclusion of the pleader.

3. **Pleading ☞214(4)—Demurrer does not admit conclusions.**

   A demurrer admits only facts well pleaded, and not conclusions of law.

On Rehearing.

4. **Monopolies ☞12(2)—Requirement of royalties on output of other machines not prohibition of other machines.**

   The requirement in a lease of shoe machinery that the lessee shall operate the machines to capacity limited only by his total output, and shall pay a royalty on all shoes made by him, without proof that the burden thereby imposed on the manufacturer was so great as to prevent him from obtaining machines from others, is not void under Acts Mass. 1907, c. 469, § 1, prohibiting provision in a lease of machinery that the lessee shall not use machinery of any person other than the lessor, which is a penal statute and must be strictly construed.

In Error to the District Court of the United States for the District of Massachusetts; James M. Morton, Jr., Judge.

Action by the United Shoe Machinery Company against the Witherell & Dobbins Company. Demurrer to answer was sustained, and defendant brings error. Judgment vacated, and case remanded on rehearing.

Richard M. Walsh, of Boston, Mass. (Danforth W. Comins, of Boston, Mass., on the brief), for plaintiff in error.

Charles F. Choate, Jr., of Boston, Mass. (Malcolm Donald and James Garfield, both of Boston, Mass., on the brief), for defendant in error.

Before BINGHAM and JOHNSON, Circuit Judges, and ALD-RICH, District Judge.

BINGHAM, Circuit Judge. This is an action of contract brought by the United Shoe Machinery Company, a New Jersey corporation, against the Witherell & Dobbins Company, a Massachusetts corporation, to recover royalties for the use of five Goodyear welt and turn shoe machines, model K, numbered 67, 58, 216, 628, and 740, leased by the plaintiff to the defendant on September 10, 1912, January 9, 1913, and February 25, 1913. In all of the leases the material conditions and provisions are the same, and the machines leased are of the same model. The machines are patented, and are designed to sew the welt to the upper on welted boots and shoes, and to sew the sole to the upper on turned boots and shoes. The patents, at the date of the leases, were and ever since have been owned by the plaintiff.

In the declaration the material conditions and provisions of the leases are set forth, and the leases are annexed and made a part thereof. It is alleged that the leases are in full force and effect; that the defendant, since July 1, 1913, to and including October, 1916, has manufactured and prepared large quantities of turn boots, shoes, and other footwear, the soles of which have been sewed to the uppers by the use of sewing or stitching machinery; that the defendant, although requested, has failed to pay the plaintiff the sum of 1 cent for each pair of children's boots, shoes, and other footwear, and 1½ cents for each pair of men's, boys,' youths', women's and misses' boots, shoes, or other footwear, or any sums whatsoever, as required by its agreements; that it has failed to comply with its agreements to use the machines to their full capacity, and, instead of so doing, has, to a considerable extent, at least, used machines obtained from others on the shoes which it manufactured.

The machines were to be used in the defendant's factory at Haverhill, Mass. The leases contain the following provisions:

"(7) Said machinery shall be used for no other purposes than for performing the operations for which it is designed in the manufacture of 'Goodyear Welts' and 'Goodyear Turns' made by or for the licensee and for that purpose the licensee shall use the said machinery to its full capacity limited only by the number of welted or turned boots, shoes and other footwear made by or for the licensee.

"(8) The licensee until such time as he shall have redelivered all of said machinery to the United Company as hereinafter provided shall pay to the United Company the respective amounts set forth in the following schedule in respect to each pair of welted boots, shoes or other footwear or portions thereof, manufactured or prepared by or for him which shall have been welted in whole or in part or the soles of which shall have been in whole or in part attached to welts by the use of any welting or stitching or sewing machinery and in respect to each pair of 'turned' boots, shoes or other footwear, or portions thereof, manufactured or prepared by or for him, the soles of which have been sewed or attached to their uppers in whole or in part by the use

of any sewing or stitching machinery, viz.: [Then follows a schedule of payments per pair.]"

"(10) All payments and the guaranty in this agreement provided for are in-dependent of and in addition to all payments and guaranties provided for in any other leases or licenses or agreements between the United Company and the licensee; provided, however, that (excepting in so far as is required by the guaranties herein contained in other lease and license agreements between the United Company and the licensee), in case under any 'Goodyear Department' lease and license agreement between the United Company and the licensee and covering any one or more Goodyear welt and turn shoe machines, Goodyear universal inseam sewing machines or Goodyear outsole rapid lock-stitch machines, the licensee shall have paid to the United Company the amount set forth in the schedule of payments in such lease and license agreement contained in respect to any pair of boots, shoes or other footwear, then the licensee shall be relieved from said payment hereunder in respect to that pair of boots, shoes or other footwear."

"(12) The lease of and license to use the said machinery may be terminated either by the United Company or by the licensee at any time upon thirty (30) days' notice in writing to the other of such termination. If terminated by the licensee in the exercise of his right hereunder the notice of the licensee to the United Company shall be accompanied by payment to the United Company of the amount in respect to each machine set opposite the name thereof in column 'II' in the foregoing schedule of machines [$150], otherwise such notice shall be of no effect; and he shall also pay in respect to all broken or missing parts as hereinafter provided.

"(13) The United Company shall also have the right to terminate the lease of and license to use the said machines forthwith in case at any time any breach or default shall be made in the observance or performance of any of the conditions contained in any other lease or license or agreement between the United Company and the licensee, or if the licensee shall become bank-rupt or insolvent or a receiving order shall be made against him or he shall make or execute any bill of sale, deed of trust or assignment for the benefit of creditors, or if a sale, mortgage, lease or removal of said machinery or any part thereof shall be made or attempted, or if any distress, execution or attachment be levied thereon and this notwithstanding that previous instances may have been unnoticed, waived or condoned by the United Company."

In its answer the defendant admits that it entered into the agreements of September 23, 1912, January 9, 1913, and February 25, 1913; that all the machines leased thereunder were of model K, but deny that the leases were of any legal force or effect. It admits that it has manufactured shoes and other footwear which have had their soles attached to their uppers by the use of machines not obtained from the plaintiff, and that it has not paid the plaintiff royalties upon such footwear, but avers that it has paid the plaintiff royalties upon all footwear made upon machines of the plaintiff leased by it. It avers: (1) That the plaintiff is and at all times during the period covered by said agreements has been an unlawful combination in restraint of interstate trade and commerce in the manufacture and distribution of machinery used in the manufacture of shoes and other footwear and more especially of bottoming shoe machinery; that it has been and is engaged in an attempt to unlawfully monopolize, and has unlawfully monopolized, the manufacture and distribution in interstate commerce to the extent of 95 per cent. of all bottoming shoe machinery, and the machinery of the kind involved in the agreements sued upon; that said leases here sued upon are a part of a system of leases whereby said unlawful acts are being accomplished and said unlawful monopoly is

being maintained, and themselves unreasonably restrain interstate trade and commerce; and that by reason of the unlawful monopoly and attempt to monopolize, and unlawful combination hereinbefore described, the defendant has been compelled to enter into the agreements upon which the plaintiff is here suing, or in the alternative discontinue business.

It further avers: (2) That the agreements are illegal and void: In that they are made in the course of interstate commerce and constitute contracts upon the condition, agreement, and understanding that the lessee shall not use or deal in the machinery of a competitor or competitors of the lessor, the effect of such leases, and the agreement, understanding, and condition governing them, being to substantially lessen competition and to tend to create a monopoly in the manufacture and distribution in interstate commerce of shoe machinery, and more especially bottoming shoe machinery; and further (3) that the leases sued upon are leases of machinery upon the condition and provision that the lessee shall not buy, lease, or use machinery of any person, firm, corporation, or association other than the lessor, and are illegal and void, as being in contravention of chapter 469 of the Acts and Resolves of the Commonwealth of Massachusetts for the year 1907.

To the defendant's answer the plaintiff demurred and assigned the following causes:

"(1) Because the answer does not set forth any legal defense to the plaintiff's claim.

"(2) If it should be proved, as the defendant claims, that the plaintiff was an unlawful combination of the character described in the answer, such fact would not be a defense in a suit for the collection of royalties for the use of its machines which the defendant has agreed to pay.

"(3) The agreements sued on are not contracts upon the condition, agreement, or understanding that the lessee shall not use or deal in the machinery of a competitor, and the effect of said agreements is not to substantially lessen competition, nor do they tend to create a monopoly.

"(4) The agreements sued on are not contracts upon the condition or provision that the purchaser or lessee thereof shall not buy, lease, or use machinery of any person other than the lessor."

In the District Court the demurrer was sustained, and by agreement of the parties judgment was entered for the plaintiff in the sum of $8,315.34, subject to the defendant's right to prosecute this writ of error.

[1] The first question to be considered is whether subdivision (1) of the answer, as here set out, states facts sufficient to support the conclusion of the pleader that the plaintiff is an unlawful combination and conspiracy in restraint of interstate trade and was formed for the purpose of monopolizing and restraining trade in violation of the act of July 2, 1890 (26 Stat. 209, c. 647 [Comp. St. §§ 8820–8823, 8827–8830]), and that the leases sued upon are constitutent parts of that unlawful combination and conspiracy and are therefore illegal in themselves.

The most recent case in the Supreme Court, where a like question was considered and in which the prior decisions of that court in Connolly v. Sewer Pipe Co., 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679,

and Continental Wall Paper Co. v. Voight & Sons, 212 U. S. 227, 29 Sup. Ct. 280, 53 L. Ed. 486, are reviewed, is Wilder Mfg. Co. v. Corn Products Co., 236 U. S. 169, 35 Sup. Ct. 398, 59 L. Ed. 520, Ann. Cas. 1916A, 118. That case was an action brought by the Products Company to recover the price of corn syrup which it had sold to the Wilder Company, and which the latter had consumed and not paid for. One of the grounds on which the Wilder Company defended was that the Products Company had no legal existence; that it was a combination composed of all the manufacturers of corn syrup in the United States, and was illegally organized with the object of controlling all the dealings in such products, in violation of the Anti-Trust Act; that, having illegally brought into one organization all the manufacturers of corn syrup, it had unreasonably advanced the price of the products of its manufacture to the injury of the public; that, having accomplished this, it sought to perpetuate its monopoly by rendering it difficult or impossible for competitors to go into the business of producing corn syrup by devising a so-called profit-sharing scheme, by which it proposed to give those who purchased from the combination a certain percentage of the amount of purchases made in one year, to be paid at the end of the following year, on condition that during such time they dealt with no one else but the combination; and that the scheme proved successful and deterred purchasers from buying from others at a less price through fear of losing the percentage which they would receive from the combination if they continued to make all of their purchases from it alone.

The defense there set out will be seen to be more specific in its allegations of fact than the answer here under consideration. It was held (1) that the contract of sale was not inherently illegal because it contained the condition which made payment of the proposed profit-sharing percentage depend on dealing alone with the alleged combination, and (2) that the contention that these stipulations in the contract, though intrinsically legal, became illegal as a result of the duty to consider them from the point of view that one of the parties was an illegal combination, interested in inserting such conditions as an efficient means of sustaining its wrongdoing and therefore giving power to accomplish the baneful and prohibited results of its illegal organization, could not be sustained, (a) because it was not consistent with reason, and (b) was repugnant to the Anti-Trust Act; that under that act the Attorney General of the United States and the district attorneys of the United States in their respective districts, under his authority and direction, are charged with the responsibility of enforcing its provisions, and that any individual, as a means to the defense of a suit brought against him on his otherwise inherently legal and enforceable contract, could not assert that the corporation or combination bringing the suit had no legal existence because of the Anti-Trust Act; that the contention of the defendant that it was held in the Continental Wall Paper Case that that which was inherently legal could be rendered illegal by considering it in connection with the illegal corporation, with which it had no right to consider it, was clearly not so; that—

"The ruling in that case was based not upon any supposed right to import into a legal and valid contract elements of wrong which there was no right to consider, but was rested exclusively upon elements of illegality inhering in the particular contract of sale in that case, which elements of illegality may be thus summarized: (a) The relations of the contracting parties to the goods sold; (b) the want of real ownership in the seller; (c) the peculiar obligations which were imposed upon the buyer; and (d) the fact that to allow the nominal seller to enforce the payment of the price would have been in and of itself directly to sanction and give effect to a violation of the Anti-Trust Act inhering in the sale."

It has not been pointed out to us, and we are unable to see, that the answer states facts from which it can be concluded that the plaintiff is an illegal combination under the Anti-Trust Act, and that the leases sued on are direct and material parts of the combination, and themselves illegal within the above decisions. Such allegations as the answer contains with reference to these matters are conclusions of the pleader, and not admitted by the demurrer. Southern Railway Co. v. King, 217 U. S. 524, 536, 537, 30 Sup. Ct. 594, 54 L. Ed. 868; Pierce Oil Corp. v. City of Hope (decided January 27, 1919) 248 U. S. 498, 39 Sup. Ct. 172, 63 L. Ed. 381. We think, therefore, that the District Court was right in sustaining the demurrer as to this part of the answer.

[2] It remains to be considered whether, in view of the allegations of the answer, the leases are illegal and void either under the Clayton Act (Act Oct. 15, 1914, c. 323, 38 Stat. 730) or chapter 469 of the Acts and Resolves of Massachusetts of 1907.

Section 3 of the Clayton Act (Comp. St. § 8835c) provides:

"That it shall be unlawful for any person engaged in commerce, in the course of such commerce, to lease * * * machinery, * * * whether patented or unpatented, for use * * * within the United States, * * * or fix a price charged therefor, or discount from, or rebate upon, such price, on the condition, agreement or understanding that the lessee * * * thereof shall not use * * * the * * * machinery * * * of a competitor * * * of the lessor, * * * where the effect of such lease * * * or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce."

The lease or transaction made unlawful by this act is one made in the course of interstate commerce. International Text-Book Co. v. Pigg, 217 U. S. 91, 107, 30 Sup. Ct. 481, 54 L. Ed. 678, 27 L. R. A. (N. S.) 493, 18 Ann. Cas. 1103; Butler Bros. Shoe Co. v. United States, 156 Fed. 1, 17, 84 C. C. A. 167.

[3] The answer alleges that the leases are illegal and void for the reason that they "were made in the course of interstate commerce and constitute contracts upon the condition, agreement, and understanding that the lessee shall not use or deal in the machinery of a competitor or competitors of the lessor," etc. No facts are set out in the answer showing wherein the leases were transactions made in the course of interstate commerce. The allegation that they were made in the course of such commerce is a conclusion of the pleader, and, being such, is not admitted by the demurrer. The demurrer admits all material statements of fact contained in the answer which are well pleaded, but

not inferences or conclusions of law incorporated therein. Williams v. Mathewson, 73 N. H. 242, 243, 60 Atl. 687, and cases before cited.

Indeed it would seem from provisions contained in the leases that facts did not exist which could have been alleged in the answer showing that the leases were transactions in the course of interstate commerce, for it there appears that the machines were to be delivered to the defendant at Haverhill, Mass., for use in its factory at that place, and that, upon the termination of the leases, the defendant was to redeliver the machines to the plaintiff at Beverly, Mass. We have no occasion, therefore, to consider the question whether the leases, if they had been transactions made in the course of interstate commerce, were illegal and void as being in violation of the provisions of section 3.

Chapter 469 of the Acts and Resolves of Massachusetts of 1907, is as follows:

"Section 1. No person, firm, corporation or association shall insert in or make it a condition or provision of any sale or lease of any tool, implement, appliance or machinery that the purchaser or lessee thereof shall not buy, lease or use machinery, tools, implements or appliances or material or merchandise of any person, firm, corporation or association other than such vendor, or lessor; but this provision shall not impair the right, if any, of the vendor or lessor of any tool, implement, appliance or machinery protected by a lawful patent right vested in such vendor or lessor to require by virtue of such patent right the vendee or lessee to purchase or lease from such vendor or lessor such component and constituent parts of said tool, implement, appliance or machinery as the vendee or lessee may thereafter require during the continuance of such patent right: Provided, that nothing in this act shall be construed to prohibit the appointment of agents or sole agents to sell or lease machinery, tools, implements or appliances.

"Sec. 2. Any person, firm, corporation or association, * * * that violates the provisions of this act shall be punished for each offense by a fine not exceeding five thousand dollars.

"All leases, sales or agreements therefor hereafter made in violation of any of the provisions of this act shall be void as to any and all of the terms or conditions thereof in violation of said provisions."

In its answer the defendant says that the leases are rendered illegal and void by this statute, in that they are leases of machinery upon the condition and provision that the lessee shall not buy, lease, or use the machinery of any person, firm, association, or corporation other than the lessor. But the last paragraph of the act is apparently less broad than the defendant would seem to think, for it says that leases made in violation of its provisions shall be void as to the "terms or conditions thereof in violation of said provisions."

The question therefore is whether the leases contain provisions or conditions which in terms or in effect provide that the defendant will not use the machines of others, and, if so, whether the obligation to pay royalties is such an integral part of or so dependent upon such conditions or provisions that the obligation to pay the same is rendered void by the statute.

The leases contain provisions that the defendant shall use the leased machines to their full capacity, and shall pay therefor as royalties so much per pair on its output. The declaration alleges that the defendant has failed to pay the price agreed per pair on its output; that the

exact number of shoes on which it has failed to pay the plaintiff as agreed is unknown to it, but is in excess of 600,000 pairs; that said shoes have had their soles attached to their uppers by the use of machines not obtained from the plaintiff, although during a considerable part, if not all, of the time when said shoes were being manufactured, the leased machines were idle or not used to capacity, and said shoes or a greater part thereof could have had their soles attached to the uppers by said machines if the defendant had complied with its agreement to use such machines to their full capacity.

In the defendant's answer it is admitted that it has manufactured shoes which have had the soles attached to their uppers by the use of machines not obtained from the plaintiff, and that it has not paid the plaintiff royalties therefor, but has paid royalties on all the shoes made upon the leased machines.

The defendant contends that, inasmuch as what the plaintiff is here seeking to recover are royalties based upon the use made by the defendant of machines of others—all royalties based on the use of the leased machines having been paid—and the use of machines of others is, as alleged in the declaration, a breach of the covenant to use the leased machines to their full capacity, the full capacity covenant is in substance and effect a provision or condition binding the defendant not to use the machines of others upon its output.

On the other hand, the plaintiff contends that the leases do not contain provisions that in terms obligate the defendant not to use the machines of others, and that no such obligation can be implied from the provisions or conditions imposed.

While the covenant to use the leased machines to their full capacity is in terms affirmative, its operative effect, as disclosed in the declaration, is negative, and requires the defendant not to use the machines of others, to the extent that the leased machines are capable of performing its work, or suffer a forfeiture; and, as the agreement of the defendant to pay royalties on its output was evidently inserted, not only for the purpose of requiring the defendant to fulfill the above-described obligation, but to further enlarge and extend its scope, we think it thus became so related thereto that it is in violation of the Massachusetts statute, and the demurrer should be overruled. The plaintiff, however, will be permitted to withdraw its demurrer and plead over if it so desires.

The demurrer is overruled, and the case is remanded to the District Court for further proceedings not inconsistent with this opinion, with costs in this court to the plaintiff in error.

### On Rehearing.

After our former opinion of June 18, 1919, was handed down the plaintiff moved for a rehearing, and on October 21, 1919, further argument was invited "as to the meaning of the provisions of chapter 469 of the Acts and Resolves of Massachusetts of 1907 and their application to and effect upon the provisions of the leases in question in

this action." Since then additional briefs have been filed and arguments had.

The plaintiff bases its right to recover for the use of its machines upon what is called the factory output provision, the terms of which are stated in paragraphs 8, 9, and 10 of the leases. Under it the lessee is required to pay for the use of a machine a certain sum "in respect to each pair of welted boots, shoes or other foot wear or portions thereof, manufactured or prepared by or for him which shall have been welted in whole or in part or the soles of which shall have been in whole or in part attached to welts by the use of any welting or stitching or sewing machinery, and in respect to each pair of 'turned' boots, shoes or other footwear, or portions thereof, manufactured or prepared by or for him, the soles of which have been sewed or attached to their uppers in whole or in part by the use of any sewing or stitching machinery." It was provided, however, that in case the lessee had paid the amount set out in the schedule of payments of a given lease in respect to any pair of boots, shoes, or other footwear, then he should be relieved from paying under any other of its leases in respect to that pair of boots, shoes, or other footwear. In other words, a lessee is required to pay for the use of a given machine royalties based on his entire output even though the leased machine is incapable of performing the work required for the output, but may have other machines from the plaintiff to perform this additional work without increased expense. He may, if he desires, upon 30 days' notice and the payment of $150, cancel his lease; but if he does not cancel the lease and obtains the additional machines elsewhere he subjects himself to paying the plaintiff on the output of the mill for the use of its machine, as well as paying for the use of machines obtained elsewhere to perform the additional work.

The question therefore is whether the factory output provision amounts to a condition or provision that the lessee "shall not buy, lease or use machinery * * * of any person, firm, corporation or association other than" the lessor within the meaning of section 1 of chapter 469 of the Acts and Resolves of Massachusetts of 1907.

[4] It is plain that the operative effect of this undertaking is to induce the defendant to take the necessary additional machines from the plaintiff and to refrain from taking them from others; but it is not in terms an agreement or undertaking that it will do so, and we cannot say, as matter of law, that the burden imposed is so great that the parties must have understood that the lessee was not to obtain machines from others. The Massachusetts act is a penal statute and is to be strictly construed, and so construed it contemplates that a lease, in order to be within its provisions, shall be made upon the condition or agreement that the lessee shall not buy, lease, or use the machinery of others. As the output clause does not in terms impose such a condition or agreement, and the answer does not allege facts showing such to be its legal and necessary effect, we cannot say that under it a lessee is required to procure machines only from the plaintiff.

Whether the leases contain other provisions in violation of the act we are not called upon to consider, as this is the only provision relied

upon, and the Massachusetts act renders leases void only to the extent that the terms or conditions thereof violate the provisions of the act.

As it is not alleged in the answer that the burden imposed by the output clause is so great as to require the defendant to obtain all its machines from the plaintiff, it may be accorded an opportunity to amend its answer in this respect, if it so desires; otherwise judgment should be entered for the plaintiff.

Our previous order in this case is modified to read as follows:

The judgment of the District Court is vacated, and the case is remanded to that court for further proceedings not inconsistent with this opinion, with costs to the defendant in error.