## DUEBER WATCH CASE MANUF'G CO. v. E. HOWARD WATCH & CLOCK CO. et al.

### (Circuit Court, S. D. New York. May 22, 1893.)

1. COMBINATIONS IN RESTRAINT OF TRADE — ACTION FOR DAMAGES — PLEADING.

An action to recover damages alleged to have been caused by acts done in violation of the statute prohibiting monopolies and combinations in restraint of trade (26 Stat. 209) cannot be maintained when the complaint fails to show that plaintiff is engaged in interstate commerce, and no such showing is made by an averment that plaintiff is engaged in "manufacturing watch cases throughout all the states of the United States and in foreign countries."

2. SAME — CONSTRUCTION OF STATUTE.

An agreement by a number of manufacturers and dealers in watch cases to fix an arbitrary price on their goods, and not to sell the same to any persons buying watch cases of plaintiff, is not in violation of the statute; and a complaint which, on the last analysis, avers only these facts, without averring the absorption or the intention to absorb or control the entire market, or a large part thereof, states no cause of action.

At Law. Action by the Dueber Watch Case Manufacturing Company against the E. Howard Watch & Clock Company and others to recover damages alleged to result from an illegal conspiracy to destroy plaintiff's trade. Defendants demur to the complaint. Demurrer sustained.

Statement by COXE, District Judge:

The complaint alleges that prior to November 16, 1887, the plaintiff was engaged in manufacturing watch cases throughout all the states of the United States and in foreign countries, employing a large number of skilled artisans who were and are able to produce 25,000 watch cases per month. That prior to said date the plaintiff had a ready market for its goods throughout the United States and Canada, and realized a profit of, at least, $175,000 per annum. That on November 16, 1887, the defendants, who were and are engaged in selling watches and watch cases, mutually agreed, and notified the watch dealers throughout the United States and Canada, including some of the plaintiff's customers, "that they would not thereafter sell any goods manufactured by them to any person, firm, association, or corporation whatsoever who thereafter should buy or sell any goods manufactured by

this plaintiff." That upon being informed of said agreement a large number of dealers who had previously purchased plaintiff's goods withdrew their patronage and ceased to deal in plaintiff's goods. That the defendants refused to sell their goods to plaintiff's customers, giving as a reason that the said customers dealt in plaintiff's goods and defendants declined to have any business relations with them unless they would agree not to deal in the plaintiff's goods. That prior to November 16, 1887, the defendants agreed among themselves that they would maintain an arbitrary fixed price for their goods, and pursuant thereto they have fixed and maintained an arbitrary price which the public must pay for their goods. That said agreement of November 16, 1887, was for the sole purpose of compelling plaintiff to join with the defendants in their previous agreement to fix and maintain arbitrary prices for watch cases. That all of said acts of the defendants were for the purpose of establishing a monopoly in watch cases, their object being to crush competition and drive the plaintiff from the business, unless he joined the conspiracy. That the defendants by their agreements intended to injure and impoverish the plaintiff and deprive it of all profits and break up its business. That the defendants have used the extended influence acquired by reason of the combination formed between them to prevent persons who naturally would purchase plaintiff's watch cases from dealing with the plaintiff and have threatened said persons that if they bought plaintiff's goods they would sell them no goods and give them no credit. That such conduct and threats effected a complete boycott and resulted in the ostracism of plaintiff from the trade, preventing the lawful and ordinary competition in business which plaintiff had a right to enjoy. That after the passage of the act of July 2, 1890, entitled, "An act to protect trade and commerce against unlawful restraints and monopolies," the plaintiff would have regained its customers and reestablished its business had not the defendants since that date ratified, confirmed, renewed and continued in force the said contracts, agreements and combinations and served notice thereof upon all the dealers in plaintiff's goods. That by reason of said renewals and continued threats said dealers have been compelled to refuse to purchase plaintiff's goods to its damage in the sum of $150,000. Judgment is demanded for three times this sum, pursuant to section 7 of said act.

The defendant above named demurs on the ground that the court has no jurisdiction of the defendant or the subject-matter of the action, and, on the further ground, that the complaint does not state facts sufficient to constitute a cause of action. The sections of the act of July 2, 1890, which are drawn in question, so far as it is necessary to quote them, are as follows: "Section 1. Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, is hereby declared to be illegal. Sec. 2. Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several states, or with foreign nations, shall be deemed guilty of a misdemeanor," etc. "Sec. 7. Any person who shall be injured in his business or property by any other person or corporation by reason of anything forbidden or declared to be unlawful by this act, may sue therefor in any circuit court of the United States in the district in which the defendant resides or is found, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the costs of suit, including a reasonable attorney's fee."

Wilber & Oldham and Robert Sewell, for plaintiff.

Sullivan & Cromwell, W. J. Curtis, and Edward B. Hill, for defendants.

COXE, District Judge, (after stating the facts as above.) An examination of the complaint, in the light of the provisions of the act of July 2, 1890, and the decisions construing that act, leads to the conclusion that the complaint, in its present form at least, cannot be sustained. The statute makes it illegal to enter into

a contract or conspiracy in restraint of interstate trade and also to monopolize, or attempt to monopolize, or combine or conspire with others to monopolize, such trade. There is no allegation in the complaint that the plaintiff is engaged, or has at any time, since the passage of the act, been engaged in interstate trade and commerce. There is an allegation that the plaintiff is engaged in the business of manufacturing watch cases throughout all the states of the United States and in foreign countries. This allegation is probably a mistake of the pleader, but if it were true it would not be a compliance with the requisites of the law. A corporation may have an operating manufactory in every state of the Union and yet not be engaged in interstate commerce. There is no allegation that the defendants are, or that any of them is, or was, engaged in interstate trade, or that the articles made by them are used in such trade, or that the rights of the general public have been invaded, or interstate commerce injuriously affected by any of the acts of the defendants as described in the complaint. There is no allegation that the defendants absorbed or intended to absorb the entire trade in watch cases, or that they controlled the market, or any considerable part thereof, or that they were even a majority of the watch manufacturers of the United States, or that the prices fixed by them were more than the goods were worth or in any respect unfair. There is no statement that the goods made by the defendants were made by them exclusively, or that such goods were indispensable to plaintiff's customers; non constat, such goods could have been furnished by the plaintiff or dealers other than the defendants.

What, then, is the accusation? When analyzed it will be found that the illegal acts charged against the defendants are, first, that they agreed to maintain an arbitrary fixed price for their goods; second, that they agreed not to sell their goods to plaintiff's customers: and, third, that they notified plaintiff's customers of their determination. It is only necessary to examine the first and second of these allegations, for it is manifest that if the agreements made by the defendants were lawful it could not be unlawful to notify the world of their existence. Both of the alleged agreements were made before July 2, 1890, the result being that the plaintiff, before the passage of that act, lost its customers. The only acts of the defendants which by any possibility can be construed as a violation of the statute were the ratification and renewal of these agreements after its passage. The complaint alleges that but for such renewal the plaintiff would have regained all its old customers.

The first question then is, does it constitute a violation of the statute for two or more dealers to fix an arbitrary price for their goods? No authority has gone to the extent of holding that such a transaction, in the absence of other facts, is illegal.

The second question is: Is it an illegal act, within the provisions of the law in question, for two or more traders to agree among themselves that they will not deal with those who prefer

to purchase the goods of another designated trader in the same business? Many perfectly legitimate reasons might be suggested for such an agreement. It is not a combination to monopolize; at least there is no statement of facts tending to show that it produced a monopoly in the present case. Indeed, it would seem that it must have had a contrary effect. There was surely nothing to prevent the plaintiff from supplying its customers with those things which the defendants declined to sell them, and thus enlarge its trade and stimulate competition. The plaintiff was perfectly free to engage in every branch of the watchmaking business. So were all others. The plaintiff's customers were free to purchase of the plaintiff, of the defendants, or of any other manufacturer. The contract of 1887 was not one in restraint of trade within any of the definitions or authorities which have been examined, and it is thought that the defendants' acts are not reached by any section of the law in question. The construction contended for by the plaintiff would render each of the defendants liable to an indictment not only, but would make unlawful almost every combination by which trade and commerce seek to extend their influence and enlarge their profits. It would extend to every agreement where A. and B. agree that they will not sell goods to those who buy of C. It would strike at all agreements by which honest enterprise attempts to protect itself against ruinous and dishonest competition.

It is thought that these views are in conformity with the decisions of the courts construing the act of 1890. In re Greene, 52 Fed. Rep. 104; U. S. v. Nelson, Id. 646; U. S. v. Trans-Missouri Freight Ass'n, 53 Fed. Rep. 440; In re Corning, 51 Fed. Rep. 205; In re Terrell, Id. 213. The demurrer is sustained.