### RICE v. STANDARD OIL CO.

(Circuit Court, D. New Jersey.    January 6, 1905.)

1. MONOPOLIES—ACTION FOR VIOLATION OF ANTI-TRUST ACT—PLEADING.

   Section 1 of the Sherman anti-trust act (Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]), which declares illegal "every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce among the several states or with foreign nations," makes a distinction between a contract and a combination or conspiracy in restraint of trade, and a declaration in a suit based on section 7 (26 Stat. 210 [U. S. Comp. St. 1901, p. 3202]) to recover damages resulting to plaintiff from a violation of such provision, which alleges in a single count that defendant entered into a "contract, combination, and conspiracy" in restraint of trade, is bad for duplicity.

**2. SAME.**

A declaration in an action brought under section 7 of the Sherman anti-trust act (Act July 2, 1890, c. 647, 26 Stat. 210 [U. S. Comp. St. 1901, p. 3202]) to recover damages for a violation of section 1 of the act, construed, and *held* bad for indefiniteness and uncertainty in describing the alleged combination and conspiracy entered into by defendant and the acts done which resulted in damage to plaintiff.

At Law. On motion to strike out declaration.

Charles W. Fuller and R. V. Lindabury, for the motion.
Charles E. Hendrickson, Jr., and John Griffin, opposed.

LANNING, District Judge. This matter comes before the court on a motion to strike out the plaintiff's declaration on the ground that it is irregular and defective, and so framed as to prejudice, embarrass, and delay a fair trial of the action. Such procedure is warranted by section 110 of the New Jersey practice act (P. L. 1903, p. 569). The cause of action set forth in the declaration is supposed to be created by section 7 of the Sherman anti-trust act, entitled "An act to protect trade and commerce against unlawful restraints and monopolies," approved July 2, 1890. Act July 2, 1890, c. 647, 26 Stat. 210 [U. S. Comp. St. 1901, p. 3202]. That section is as follows:

"Any person who shall be injured in his business or property by any other person or corporation by reason of anything forbidden or declared to be unlawful by this act may sue therefor in any Circuit Court of the United States in the district in which the defendant resides or is found, without respect to the amount in controversy, and shall recover threefold the damages by him sustained and the costs of suit, including a reasonable attorney's fee."

Amongst the things by the act declared to be unlawful are those mentioned in its first section (26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]), which is as follows:

"Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, is hereby declared to be illegal. Every person who shall make any such contract or engage in any such combination or conspiracy, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by fine not exceeding five thousand dollars, or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court."

It is apparent that mere proof that the defendant has entered into a contract or engaged in a combination or conspiracy in restraint of trade or commerce among the several states will not be sufficient to support a cause of action under the seventh section, for there must, in addition thereto, be proof that the plaintiff has, by reason thereof, sustained damage. In his declaration, therefore, the plaintiff must aver not only facts showing such a contract or combination or conspiracy as is declared by the act to be unlawful, but facts showing that by reason of such unlawful thing he has been injured in his business or property.

It is further apparent that the act makes a distinction between a contract and a combination or conspiracy. In his dissenting opinion in Northern Securities Co. v. United States, 193 U. S. 197, Mr. Justice Holmes, after quoting the words of the first section of the act, at page

403, 24 Sup. Ct. 436, page 469, 48 L. Ed. 679, said: "The words hit two classes of cases, and only two—contracts in restraint of trade, and combinations or conspiracies in restraint of trade." Each of these things the act condemns as an unlawful thing. They are not confused in the act, but are mentioned as distinct offenses. Good pleading, whether it be in an indictment in a criminal proceeding or in a declaration in a civil suit, requires the same distinction to be observed. If in a single count in an indictment the charge should be that the defendant entered into a contract, combination, and conspiracy in restraint of trade or commerce among the several states, it would be bad for duplicity. Compare United States v. Cadwallader (D. C.) 59 Fed. 677. So, in a declaration in a civil suit the confusion of the two condemned things in one count must likewise be irregular and defective for duplicity. In one count there may be a charge of an unlawful contract, and in another a charge of an unlawful combination or conspiracy, but the two unlawful things cannot be declared upon as synonymous terms and charged in a single count.

In the declaration now before me the plaintiff sets forth by way of inducement that from 1876 to 1904 he was a refiner of crude petroleum, and a manufacturer of the refined products of crude petroleum; was engaged in trade and commerce among the several states of the United States, selling his manufactured products refined by him from crude petroleum to the citizens of Mississippi and Louisiana, and a large number of other states specifically named, at prices profitable to him, and shipping the same to his customers in those states from his refinery at Marietta, Ohio, by certain common carriers, namely, the Cincinnati, Washington & Baltimore Railroad Company, and a large number of other railroad companies specifically named, and was lawfully entitled to ship and deliver his products to his customers over the railroads of these common carriers for a reasonable fee or reward to be paid by him or his customers to these common carriers; that More, Cox & Lee, of Columbus, Miss., and Richard M. Ong, of New Orleans, La., and 4,000 other persons in the various states named, became and were his customers of products shipped over the railroads of the common carriers specifically named, and that he had made contracts with his customers yielding him a profit of $50,000 per year, which they would have continued except for the wrongful acts and misconduct of the defendant and its associates; that he was possessed of a plant, refinery, and business of the value of seven hundred and fifty thousand dollars; that on January 2, 1882, the individuals, firms, and corporations mentioned in a certain written contract annexed to the declaration, and forming part thereof, and marked "Schedule A," were engaged in lawful competition with the plaintiff and among themselves in the same line of business as that carried on by the plaintiff; that, in order that a combination of these individuals, firms, and corporations might be formed to put an end to competition and injure and destroy the plaintiff's business and the business of others engaged in the same line throughout the United States, and drive the plaintiff and others out of competition with them, and unlawfully secure for themselves the customers who theretofore had traded or might thereafter trade with the plaintiff and others, those individuals, firms, and corporations en-

tered into the above-mentioned contract; and that on January 4, 1882, they entered into a further written contract supplemental to the contract of January 2, 1882, which supplemental contract is also annexed to the declaration as a part thereof, and marked "Schedule B." The plaintiff then avers that in pursuance of these two contracts, and as a part of the scheme of the individuals, firms, and corporations mentioned in them, the defendant, on August 1, 1882, was incorporated under the laws of the state of New Jersey with a capital of $3,000,000, under the name "Standard Oil Company of New Jersey"; that on June 14, 1899, the name of the company was changed to "Standard Oil Company," and its capital stock increased to $110,000,000; and that the defendant, from the date of its said incorporation down to the time of the commencement of this suit, joined and co-operated with the several individuals, firms, and corporations mentioned in the two contracts in a general plan or scheme to destroy the plaintiff's business, to render his plant worthless, to secure for themselves his customers, and to destroy competition and create a monopoly "by the actings and doings and in manner and form as hereinafter stated."

The first series of averments concerning these "actings and doings," which, for convenience of reference, I have designated by numbers, is as follows:

"(1) On the 4th day of August, 1882, at Trenton, in said district, the defendant entered into and became a party to said two contracts aforesaid, which said contracts were and are in restraint of trade and commerce among the several states of the United States; and (2) likewise, to wit, on the day and year last aforesaid, at Trenton, aforesaid, entered into a combination in the form of a trust and conspiracy in restraint of trade and commerce among the several states of the United States with respect to business of the character of the plaintiff's aforesaid; and (3) pursuant to the true intent and purpose of said contracts, combination and conspiracy, together with the other persons, parties to said agreement, from the day and year last aforesaid, continuously, day by day, down to the day of the commencement of this suit, did, together with other persons, parties to said agreements hereto annexed as Schedules A and B, conspire with, coerce, intimidate, and induce the above-named common carriers (4) to discriminate against the plaintiff in the matter of freight or carriage charges, (5) and to charge the said plaintiff and his customers unreasonable, excessive, and exorbitant sums of money as fees or reward for the carriage and delivery of the plaintiff's products aforesaid to the customers of the plaintiff aforesaid, to wit, from fifty per cent. to three hundred and thirty-three per cent. more than reasonable fee or reward for such carriage and delivery, and to discriminate in favor of defendant and its associates aforesaid by charging said defendant and associates for like carriage and delivery unreasonably small sums, considerably less than proper charges as fees or rewards to be paid in that behalf by the said defendant and its associates aforesaid to the common carriers aforesaid, (6) and to charge the said plaintiff from fifty per cent. to three hundred and thirty-three per cent. more for freight or carriage charges for transporting the same amount of the plaintiff's refined oils the same distance to the same points and under the same conditions as charged the said defendant and its associates aforesaid; and (7) in many cases causing and compelling [grammatically, the language should evidently be "to cause and compel"] said common carriers to pay to said defendant and its associates aforesaid the excess of freight charges charged the plaintiff over and above the rate charged the defendant and associates aforesaid, or some part thereof, thereby taking from the plaintiff his money to enable said defendant to oppress and injure the plaintiff in other ways, and to enable the said defendant and its associates aforesaid to recoup the losses, or some part thereof, sustained by it and them by reason of its and their selling oil like the

plaintiff's at prices netting a loss for the purpose of destroying the plaintiff's market for his oils and the value of oil in the plaintiff's market as hereinafter stated."

These averments, in my judgment, are bad for duplicity and uncertainty. The first clause relates exclusively to the two contracts, copies of which are annexed to the declaration. The second clause relates to what is called "a combination in the form of a trust and conspiracy." In the third clause it is averred that "pursuant to the true intent and purpose of said contracts, combination, and conspiracy" the defendant did certain things to the injury of the plaintiff. Here the pleader makes the two distinct offenses condemned by the act the basis of his complaint. This contravenes the rule which forbids duplicity in pleading. But the averments are also bad for indefiniteness and uncertainty. The third clause, particularly, is badly framed. It avers that the defendant, with other persons, did "conspire with, coerce, intimidate, and induce the above-named common carriers" to do the acts mentioned in the fourth, fifth, sixth, and seventh clauses. As the conspiracy, coercion, intimidation, and inducement are declared to have been pursuant to the true intent and purpose of the contracts, combination, and conspiracy mentioned in the first and second clauses, the fourth, fifth, sixth, and seventh clauses must be held to relate, not to an additional conspiracy, but to acts done to give effect to the contracts, combination, and conspiracy mentioned in the first and second clauses, and thus to injure the plaintiff in his business or property. When so read, we find that we have no information concerning the combination and conspiracy mentioned in the second clause, except that the combination is in the form of a trust, and that the combination and conspiracy are in restraint of trade. When they were formed, or how, or by whom, or for what purpose, is not stated. The defendant cannot be required to plead to averments that are so general and indefinite. The fourth clause is to the effect that one of the acts done was "to discriminate against the plaintiff in the matter of freight or carriage charges." This also is too general and indefinite to comply with the rules of good pleading. The fifth clause, which relates to alleged unreasonable freight rates charged against the plaintiff and his customers, is necessarily defective because of its connection with the preceding clauses. Whether it is further defective because it states none of the customers of the plaintiff against whom unreasonable charges were made, or because no facts are stated tending to show what would be reasonable rates, are questions that need not now be considered. The great difficulty, if not impossibility, of formulating a rule which shall govern in the matter of determining what are reasonable rates for transportation was commented on in United States v. Freight Association, 166 U. S., at pages 331 and 332, 17 Sup. Ct. 540, 41 L. Ed. 1007. Possibly, the sixth clause might stand if the clauses with which it is connected were not defective. The seventh clause is too indefinite, because it relates to "many cases" in which it is said that common carriers were compelled to pay to the defendant and its associates the excess of freight charges collected from the plaintiff, without the averment of any fact tending to show when, where, with whom, or in what circumstances any such case arose. The next averment in the declaration is as follows:

"And the said defendant and its associates aforesaid did also conspire with, cause and compel the railroads and other common carriers aforesaid and their employés to harass the plaintiff in his business by delaying to furnish cars and to promptly ship the plaintiff's oil sold by the plaintiff to his customers."

This averment deals with a conspiracy separate and distinct from that alleged in the preceding averments. There is no mention of any time when the alleged conspiracy was entered into, or when the alleged acts were done. The defendant's counsel have argued that it should be read in connection with the preceding averments, and that it must be understood to relate to the time which in the preceding averment is said to have been "from the day and year last aforesaid continuously, day by day, down to the day of the commencement of this suit." But the language employed will not permit such a reading. The same thing is true of each of the succeeding averments concerning alleged conspiracies. Other defects appear in the conspiracy averments. For example, it is said that the defendant conspired with the other persons, parties to the two agreements above mentioned, to cause the plaintiff's customers to cease purchasing his oil by furnishing oil like the plaintiff's product "to other dealers in localities where the plaintiff was selling oil to his customers at prices netting a loss to said defendant and its associates." But no dealer or locality is named where oil was thus supplied by the defendant, notwithstanding, if the averment be true, the plaintiff must have knowledge as to who the dealers were and as to the localities in which those dealers carried on their business. Another averment is that:

"The said defendant and its associates aforesaid also, in pursuance of said conspiracy, sought out and sold oil to the plaintiff's customers at prices less than cost, while keeping the price of oil to the defendant's and its said associates' customers in the same localities up to prices showing large net profits on sales, which facts were unknown to the customers of defendant and its associates aforesaid, thereby causing the plaintiff's customers to leave the plaintiff, and trade with the defendant and its associates aforesaid."

But the plaintiff fails to name any of his customers who were thus sought out or to whom oil was sold at prices less than cost. Another averment is that in further pursuance of the alleged conspiracy the defendant did "intimidate the customers of the plaintiff by threatening to boycott them in their business if they purchased oil of the plaintiff." But the plaintiff fails to name any of his customers who were thus intimidated. The next two averments are to the effect that the defendant and its associates "did also operate retail stores for the sale of groceries, oil, and other commodities in localities where retailers banded together and agreed to purchase and did purchase oil of the plaintiff, for the purpose of injuring such retailers and customers of the plaintiff by destroying their grocery or other business so long as they should buy oil of the plaintiff," and that they also sold groceries and merchandise "to the customers of the plaintiff's customers at such ruinous prices as to threaten ruin and loss to the plaintiff's customers." But the plaintiff fails to name any of his customers who were thus affected. Another averment is that the defendant and its associates "bribed and bought out the plaintiff's sales agents, and caused the plaintiff's agents

and employés to betray the trust confided to them by the plaintiff in his said business, and to wrongfully abandon the plaintiff's service and disregard their duty to the plaintiff in the course of his business." But none of the plaintiff's agents thus alleged to have been bribed or to have betrayed their trust is named. The next averment is that the "defendant and its associates intimidated merchants and others engaged in the business of selling oil in various markets, and thus prevented such merchants and others from purchasing and dealing in oil manufactured by the plaintiff." The plaintiff has failed to name any merchant or other person thus intimidated, or what the acts of intimidation were, or any of the markets in which such practice was carried on. The last averment is that the defendant and its associates "hampered the plaintiff in getting the necessary supplies of crude oil, and made the said crude oil more expensive to the plaintiff, and hampered, delayed, and made more expensive the work of the plaintiff in the construction of the pipe line for his use." But there is no averment as to the manner in which the defendant and its associates thus hampered, delayed, or injured the plaintiff.

It seems to me clear that the averments in the declaration are too vague to give to the defendant the information to which it is entitled before being required to plead. A declaration which was much less indefinite than the one before me was, in the case of Minnuci v. Philadelphia & Reading R. R. Co., 68 N. J. Law, 432, 53 Atl. 229, declared to be one which would have been stricken out on motion for that purpose. The same thing was true of the declaration in the case of Race v. Easton & Amboy R. R. Co., 62 N. J. Law, 536, 41 Atl. 710. See, also, Ackerman v. Shelp, 8 N. J. Law, 125; Stephens & Condit Transp. Co. v. Central R. R. Co., 34 N. J. Law, 280.

In my opinion, the motion to strike out the declaration must be granted, and an order to that effect will be signed.