**GLENN COAL CO. v. DICKINSON FUEL CO. et al.**

No. 3664.

Circuit Court of Appeals, Fourth Circuit.

Oct. 2, 1934.

George Poffenbarger, of Charleston, W. Va. (A. A. Lilly, Lilly & Lilly, and Poffenbarger & Poffenbarger, all of Charleston, W. Va., on the brief), for appellant.

Robert S. Spilman, of Charleston, W. Va. (Hawthorne D. Battle and Price, Smith & Spilman, all of Charleston, W. Va., on the brief), for appellees.

Before NORTHCOTT and SOPER, Circuit Judges, and CHESNUT, District Judge.

CHESNUT, District Judge.

The appellant in this case, as plaintiff in the district court, brought a civil suit at law against the defendants to recover three-fold damages alleged to have been sustained by violation of the Sherman Anti-Trust Act (15 USC § 15, 15 USCA § 15 and note). A demurrer to the declaration was sustained with leave to the plaintiff to amend; and after an amendment not deemed to substantially alter the nature of the case, the demurrer was again sustained. The plaintiff declined to further amend and judgment went for the defendants, from which this appeal has been taken.

The only question here is whether the amended declaration, consisting of a single count extending over twelve pages of the printed record, sufficiently states a cause of action under the statute. It is unfortunately prolix but, after analysis, the substance of the case as stated may be summarized as follows. It is alleged that the plaintiff, a West Virginia corporation, has been engaged since September 1, 1920, in mining and selling in interstate commerce bituminous coal produced from the "Black Band seam of coal, one of the Kanawha measures and seams of coal, located in the well-developed, well-defined and extensively known Kanawha coal field of West Virginia," which was and had been for many years well and favorably known in the trade as "Black Band" coal, and by reason of its superior qualities generally commanded a market price somewhat larger than other bituminous coals; and that the defendant, the Black Band Consolidated Coal Co., also a West Virginia corporation, was likewise engaged during said period in producing and selling the same kind of coal in interstate commerce as a competitor of the plaintiff; and that another defendant, the Dickinson Fuel Company, likewise a West Virginia corporation, was the sales agent for the coal produced by the Black Band Company. In addition to the corporate defendants, two individuals were also named as defendants, one C. C. Dickinson, a citizen and resident of West Virginia, being the president of the Dickinson Fuel Company, and J. Edwin Horn, a nonresident, being the president of the Black Band Company. Of the four defendants only two, the Dickinson Fuel Com-

pany and C. C. Dickinson, its president, were summoned; and it does not appear why the Black Band Company, a West Virginia corporation, was not summoned. It is stated that the only other producer of this Black Band Coal was the Kanawha Black Band Coal Company, of West Virginia.

It is further alleged, in the language of sections 1 and 2 of the Anti-Trust Act (15 USC §§ 1, 2, 15 USCA §§ 1, 2) that the four named defendants on or about the 5th of June, 1923, and thereafter until the commencement of the suit, May 12, 1932, unlawfully combined and conspired, in restraint of trade, to monopolize and did monopolize and unlawfully control the market in the sale and price of said Black Band seam of coal in interstate commerce, and destroyed competition between the plaintiff and the Kanawha Black Band Coal Company, on the one hand, and the defendant, the Black Band Consolidated Coal Company on the other hand, in consequence of which the Black Band Company was enabled to sell its coal at a higher price than could have been obtained if the market had been free, and the plaintiff was injuriously affected to the extent that its own sales of coal during said period were lessened by 100,000 tons and it was compelled to sell at least 150,000 tons at a price of twenty-five cents per ton less than it was really worth, and thus lost $62,500. It is further alleged that the plaintiff suffered this loss because, by reason of the defendants' activities, it was not able to sell its coal as "Black Band" coal. The means by which the object of the conspiracy was effected is alleged to have been the illegal and unlawful procurement by the Black Band Consolidated Coal Company, with the connivance of the other defendants, of a United States trade mark, consisting of the words "Black Band" numbered 182,171, for the coal produced and sold by it, and thereafter threatened the plaintiff and its customers with suits for damages if the plaintiff's coal should be sold as "Black Band." It is further alleged that on November 20, 1923, while the application for the trade mark was "secretly pending" and its pendency was unknown to the plaintiff, the Dickinson Fuel Company took from the plaintiff an exclusive coal sales agency for the sale of its coal as "Black Band" coal and thereafter fraudulently and deceitfully and without the knowledge of the plaintiff, sold its coal not as "Black Band" coal as it had been sold and was being sold when said agency was taken, but as "Kanawha" coal or "Blue Ribbon" coal until January 10, 1924.

The question presented is whether the amended declaration discloses in substance a violation of the Anti-Trust Act by the defendants with consequent material injury to the plaintiff. The language of section 15, on which the action is based, is as follows:

"Any person who shall be injured in his business or property by reason of anything forbidden in the anti-trust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

To recover, the plaintiff must establish two things: (1) A violation of the Anti-Trust Act and (2) damages to the plaintiff proximately resulting from the acts of the defendant which constitute a violation of the Act. In a civil suit under this section, the gist of the action is not merely the unlawful conspiracy or monopolization or attempt to monopolize interstate commerce in the particular subject matter, but is damage to the individual plaintiff resulting proximately from the acts of the defendant which constitute a violation of the law. A mere conspiracy with intent to violate the law while it may be the basis of a valid indictment under the criminal sanction of the Anti-Trust Act, does not give rise to a personal civil suit for damages.

Thus it has been held in numerous federal decisions that in a civil suit under this special Act the declaration must allege facts from which the court can determine that there has been a violation of the Act with resultant damage proximately caused thereby to the plaintiff. In Alexander Milburn Co. v. Union Carbide & Carbon Corp. (C. C. A. 4) 15 F. (2d) 678, 680 (certiorari denied, 273 U. S. 757, 47 S. Ct. 459, 71 L. Ed. 876) this Court, by Judge Parker, said:

"For it is not sufficient that the declaration be framed in the words of the statute, or that it allege mere conclusions of the pleader. It must describe with definiteness and certainty the combination or conspiracy relied on, as well as the acts done which resulted in damage to plaintiff, and, in doing so, must set forth the substance of the agreement in restraint of trade, or the plan or scheme of the conspiracy, or the facts constituting the attempt to monopolize. 19 R. C. L. 87; Cilley v. United Shoe Mach. Co. (C. C.) 152 F. 726; Rice v. Standard Oil Co. (C. C.) 134 F. 464."

The same rule has been announced in other cases. Jack v. Armour & Co. (C. C. A. 8) 291 F. 741; Tilden v. Quaker Oats Co. (C. C. A. 7) 1 F.(2d) 160; Witherell & Dobbins Co. v. United Shoe Machinery Co. (C. C. A. 1) 267 F. 950; Corey v. Independent Ice Co. (D. C. Mass.) 207 F. 459; Dueber Watch Case Mfg. Co. v. E. Howard Watch & Clock Co. (C. C. S. D. N. Y.) 55 F. 851; Blumenstock Bros. Advertising Agency v. Curtis Pub. Co., 252 U. S. 436, 440, 40 S. Ct. 385, 386, 64 L. Ed. 649. Compare Albert Pick-Barth Co. v. Mitchell-Woodbury Corp., 57 F.(2d) 96 (C. C. A. 1).

■■ In this case we must, therefore, carefully analyze the declaration to ascertain what act or acts of the defendants are alleged which amount to a violation of the law with consequent damage to the plaintiff. It is alleged in the declaration with much emphasis and repetition that the defendants unlawfully combined and conspired to violate the law, and to restrain and monopolize the trade and also that their acts were unlawful, fraudulent, deceptive and accompanied by the intent to violate the law. These are, however, only general allegations and in themselves no more than conclusions of the pleader in the absence of averment of specific acts of the defendants from which it can be determined as a matter of law whether the Act has in fact been violated with resultant damage to the plaintiff. Here we find that only two specific acts are set out consisting of (1) defendants' activities with respect to the allegedly deceitfully procured exclusive sales agency taken by the Dickinson Fuel Company from the plaintiff, and (2) the registration of the trade mark with threat of suit if infringed. As to the former, it appears its duration was limited to the period from November 20, 1923, until January 10, 1924, less than two months, and it terminated more than 8 years prior to the commencement of the suit. As the plaintiff is seeking to recover damages by virtue of the defendants' conspiracy for only five years (the period of limitations) preceding the institution of the suit, it seems obvious that the allegedly deceitfully procured and unfairly executed sales agency by the Dickinson Fuel Company could not possibly have been an effective cause of the plaintiff's damages sustained during this five-year period. This allegation may, therefore, be dismissed from further consideration. The only remaining act of the defendants alleged as showing a violation of the Anti-Trust Act and causing damage to the plaintiff is the registration of the trade mark. The exact date of this registration is not stated in the declaration but was admitted to have been April 1, 1924. While the declaration alleges that the registration of the trade mark was procured illegally and unlawfully, it does not specify in what the illegality and unlawfulness consisted. Nor does it show that the plaintiff has ever taken any action to have the trade mark cancelled as authorized by section 93 of title 15 USC (15 USCA § 93), or to bring an action for damages against the Black Band Consolidated Coal Company, the registrant of the mark, as authorized by section 104 of title 15 USC (15 USCA § 104); nor does it appear from the declaration that the plaintiff has asserted its rights in litigation or otherwise to continue to sell its coal as "Black Band" coal despite the allegedly unlawful registration of the trade mark by the registrant.

■ It is thus seen that the question of law presented as to the sufficiency of the declaration is simply this: where there are two competitors in interstate trade in the same article, does the registration of a trade mark by one, with incidental insistence on exclusive proprietary rights therein, of itself constitute a violation of the Anti-Trust Act, upon the mere allegation that the procurement of registration was unlawful (without specification as to how or why), coupled with the allegation that it was done in furtherance of a conspiracy to restrain and monopolize interstate commerce in the article, thus entitling the plaintiff to three-fold damages. In our opinion the answer must be in the negative. The law with regard to registration of interstate trade marks has been very fully covered by statutes which provide the terms and conditions for their registration, for the cancellation thereof if improperly registered, and for damages to individuals resulting from improper registration as a result of a false or fraudulent declaration or representation, oral or in writing, or by any false means. The measure of damages is simply the actual damage sustained. We think it quite unreasonable to conclude that it was the intention of Congress in providing for three-fold damages in a civil suit for violation of the Anti-Trust Act to have intended to thereby give to a plaintiff in a case of this kind three-fold damages in addition to those given by the trade mark law, merely on the allegation that the registration was in furtherance of a conspiracy to violate the Anti-Trust Act. See Keogh v. C. & N. W. Rwy. Co., 260 U. S. 156, 162, 43 S. Ct. 47, 67 L. Ed. 183. Such a construction would necessarily extend the scope of the latter Act to cases beyond its fair im-

port and make it possible to convert almost any and every trade mark controversy into a civil suit under the Sherman Act. It is well known that the main purpose of the Anti-Trust Act was to protect the public from monopolies and restraint of trade and the individual right of action was but incidental and subordinate. This was well expressed by Mr. Chief Justice White in Wilder Mfg. Co. v. Corn Products Co., 236 U. S. 165, 174, 35 S. Ct. 398, 401, 59 L. Ed. 520, Ann. Cas. 1916A, 118, in the following language:

"In other words, founded upon broad conceptions of public policy, the prohibitions of the statute were enacted to prevent not the mere injury to an individual which would arise from the doing of the prohibited acts, but the harm to the general public which would be occasioned by the evils which it was contemplated would be prevented, and hence not only the prohibitions of the statute, but the remedies which it provided, were coextensive with such conceptions."

Thus, the declaration to be good must show not only damages sustained by the individual plaintiff but even more importantly a violation of public rights prohibited by the Act. It is not sufficient that the declaration shows merely a good cause of action at common law. As was said by the Supreme Court in the Blumenstock Case, supra:

"In order to maintain a suit under this act the complaint must state a substantial case arising thereunder. The action is wholly statutory, and can only be brought in a District Court of the United States, and it is essential to the jurisdiction of the court in such cases that a substantial cause of action within the statute be set up."

There is much internal evidence in the amended declaration itself and in facts of which we may fairly take judicial notice, that the substantial grievances complained of are private rather than public. The subject matter relates to coal mined from a particular seam in a very limited coal mining area in one county of West Virginia. There are only three producers of this particular bituminous coal, the defendant, the Black Band Company, having an annual production of 100,000 tons; the Kanawha Coal Company, producing 30,000 tons, and the plaintiff, having an actual production of 50,000 tons per year with an allegedly possible output of 70,000 tons

per year, or in all, not more than 200,000 tons per year for all three producers, or, 1,000,000 tons in the five years prior to the institution of the suit, as compared with the total output for the years 1928–32, inclusive, for the whole country, amounting to 2,191,016,256 tons. During the same years the amount of bituminous coal produced in West Virginia was 578,181,824 tons. It is mathematically obvious that the amount of bituminous coal produced from the Black Band seam in West Virginia is almost infinitesimal as compared with the total country-wide production, and it is not reasonable to infer that the public interest has been appreciably affected by the private controversy between the parties growing out of the registration of the name "Black Band" as a trade mark applicable to the defendants' coal. (Note) We cannot accept the appellant's contention that the alleged superior quality of Black Band coal so sets it apart from other bituminous coal that the public interest must thereby be considered to have been affected. In this respect the situation is not dissimilar to that dealt with by the Supreme Court in the first Coronado Case (United Mine Workers of America v. Coronado Coal Co.), 259 U. S. 344, 412, 42 S. Ct. 570, 66 L. Ed. 975, 27 A. L. R. 762, where the court held that an alleged conspiracy to suppress the production of 5,000 tons a week of coal, in a national weekly production of from 10,000,000 to 15,000,000 tons, or a production in the particular district of 150,000 tons a week, was too negligible an amount to have any appreciable effect upon the interstate price of coal. Other cases holding that the public interest is not involved unless the restraint of interstate trade is substantial in amount are McLatchy v. King (D. C. Mass.) 250 F. 920; Marienelli v. United Booking Offices of America (D. C. S. D. N. Y.) 227 F. 165; Dueber Watch Case Mfg. Co. v. E. Howard Watch & Clock Co. (C. C. S. D. N. Y.) 55 F. 851; Konecky v. Jewish Press (C. C. A. 8) 288 F. 179; Standard Oil Co. v. United States, 283 U. S. 163, 176, 51 S. Ct. 421, 75 L. Ed. 926; Indiana Farmer's Guide Pub. Co. v. Prairie Farmer Pub. Co., 70 F. (2d) 3, 5, (C. C. A. 7). Compare Albert Pick-Barth Co. v. Mitchell-Woodbury Corp., 57 F.(2d) 96 (C. C. A. 1); Mitchell Woodbury Corp. v. Albert Pick-Barth Co., Inc., 41 F.(2d) 148 (C. C. A. 1), reversing (D. C.) 36 F.(2d) 974.

Note: The figures are given in the appellees' brief without contradiction by appellant's counsel, and are said to be shown by the reports of the U. S. Bureau of Mines and published in Saward's Annual for 1933, p. 11, and given wide publicity in trade journals and other publications.

■ We do not mean to hold that the illegally procured registration of a trade mark may not properly be considered with other well pleaded acts of the defendants as a part of a larger plan to violate the Anti-Trust Act where it can be seen from facts alleged in the declaration that there has been a substantial violation of the public interest protected by the Act. See Standard Oil Co. v. United States, 283 U. S. 163, 51 S. Ct. 421, 75 L. Ed. 926. But here we find nothing alleged beyond the bare fact that a trade mark was procured and rights thereunder asserted by the defendants without the allegation of any other facts, apart from general averments of violation of the Act as conclusions of the pleader. It is true that the mere registration of the mark is not itself conclusive, but the presumption is of validity and regularity in the registration until it is overcome by proof to the contrary. And we do not think the mere general allegation that the mark was illegally and unlawfully procured is sufficient of itself to show an intent to monopolize trade in the subject matter to which the mark is applicable, especially where it does not clearly appear that the public interest was substantially involved. Nor does the allegation in the declaration that the defendants knew the mark was not susceptible of registration substantially better their case in this respect, in the absence of some alleged fraudulent act or misrepresentation. An obvious possible objection to the mark was that it was descriptive and a geographical term, but even such terms have been held good marks in certain cases. In the absence of specific fraud alleged, the matter of registration was evidently one of opinion only.

The Circuit Court of Appeals for the Sixth Circuit recently dealt with a somewhat similar case in International Visible Systems Corp. v. Remington-Rand, Inc., 65 F.(2d) 540, where an allegation, that the defendant maliciously and without probable cause and with intent to destroy business of the plaintiff and smother competition instituted a pretended patent infringement case, was held not sufficient to sustain a declaration in a civil suit under the Anti-Trust Act.

■ The demurrer was also properly sustained because it appears that the plaintiff's cause of action was barred by limitations. Under the later West Virginia cases this is a defense which may be availed of on demurrer in law cases. Doss v. O'Toole, 80 W. Va. 46, 48, 92 S. E. 139 (1917); Cameron v. Cameron, 111 W. Va. 375, 162 S. E. 173 (1931). In West Virginia the suing out of the summons is the commencement of the action for the purpose of applying the statute of limitations. Lambert v. Ensign Mfg. Co., 42 W. Va. 813, 26 S. E. 431. In this case the record shows that the summons was sued out on May 12, 1932. As the Anti-Trust Act does not itself prescribe the period of limitations for civil suits and there is no other federal statute applicable thereto, the period of limitations is that fixed by the local law of the State of West Virginia. Chattanooga Foundry & Pipe Works v. Atlanta, 203 U. S. 390, 27 S. Ct. 65, 51 L. Ed. 241. The applicable West Virginia statute is section 12, art. 2, c. 55, West Virginia Code of 1931, which provides:

"§ 12. *Personal Actions Not Otherwise Provided For.*—Every personal action for which no limitation is otherwise prescribed shall be brought within five years next after the right to bring the same shall have accrued, if it be for a matter of such nature that, in case a party die, it can be brought by or against his representative; and if it be for a matter not of such nature, shall be brought within one year next after the right to bring the same shall have accrued, and not after."

■ The appellant contends that under this statute the period of limitations for this case is five years, while the appellees contend that it is only one year. Which view is correct is to be determined not from the local West Virginia decisions but from federal decisions construing the Act of Congress in the light of the common law and determining whether the nature of the civil action is one that survives or abates upon the death of the party. And on this question the federal decisions are in conflict. See Caillouet v. American Sugar Refining Co. (D. C. La.) 250 F. 639; Bonvillain v. American Sugar Refining Co. (D. C. La.) 250 F. 641; Haskell v. Perkins (D. C. N. J.) 28 F.(2d) 222; Perkins v. Haskell (C. C. A. 3) 31 F.(2d) 53, holding that the cause of action does not survive; while Sullivan v. Associated Bill Posters, etc. (C. C. A. 2) 6 F.(2d) 1000, 42 A. L. R. 503 (Circuit Judge Hough dissenting); United Copper Securities Co. v. Amalgamated Copper Co. (C. C. A. 2) 232 F. 574; Imperial Film Exchange v. General Film Co. (D. C. N. Y.) 224 F. 985, hold that it does survive. It is, however, unnecessary for us to decide in this case whether the period of limitations is five years or one year because under either holding, in our opinion, the declaration is demurrable on the ground of limitations in view of what is now to be stated.

 The heart of the plaintiff's case lies in the allegation that its business profits were impaired during the period of five years prior to the commencement of the suit by the defendants' insistence on its alleged trade mark rights. The declaration does not show what resistance the plaintiff made to the defendants' claims regarding the trade mark but the inference from the allegations of the declaration is that it was unable to successfully combat them in the trade. This obviously could be true only if the trade mark remained uncancelled, because it would be idle to contend that the defendants' claims could have been the proximate cause of the plaintiff's loss if the plaintiff had successfully asserted the invalidity of the mark. While the declaration is entirely silent as to what defensive measures, if any, the plaintiff used against the defendants' claim it appears as one of the grounds of demurrer that the trade mark was in fact cancelled more than five years prior to the commencement of this suit, and we are referred to the opinion of the Court of Appeals of the District of Columbia in the case of Black Band Consolidated Coal Company v. Glenn Coal Company (the same parties named herein) 57 App. D. C. 268, 20 F.(2d) 284, from which it appears that in September 1924, the plaintiff instituted a cancellation proceeding against the trade mark and in August 1925, the Examiner of Interferences, after hearing the evidence, recommended that the registration be cancelled. This decision was affirmed by the Commissioner of Patents and the registration was in due course cancelled. The cancellation was put upon the ground that the mark was purely descriptive and geographical; and it does not appear that there was any issue as to fraud or misrepresentation in procuring it. On appeal (submitted May 9, 1927) the Court of Appeals of the District of Columbia affirmed the cancellation on May 26, 1927.

It further appears from other assigned causes in support of the demurrer, that thereafter the plaintiff brought suit in the District Court for the Southern District of West Virginia against the Black Band Consolidated Coal Company for damages sustained by the registration of the mark and recovered therein a judgment of $20,642. And it likewise further appears that the plaintiff and the Dickinson Fuel Company have litigated the alleged breach of the agency agreement referred to in the declaration. See Dickinson Fuel Company v. Glenn Coal Company, 103 W. Va. 366, 137 S. E. 539 (1927). In view of these disclosures the statement of the case as contained in the declaration assumes an air of unreality. Nevertheless the appellant invokes the generally accepted rule of pleading that only the facts disclosed by the declaration, in connection with other facts to which the court may properly take judicial notice, may be considered on demurrer. We are not now concerned with the question as to whether the recovery in the damage suit is a bar to the present suit; nor in view of what has already been said is the litigation over the agency agreement of importance here. But we cannot approve the appellant's contention that the cancellation of the trade mark more than five years prior to the commencement of this suit must be disregarded. It is said that we may not take judicial notice of the decision in the case of the Black Band Consolidated Coal Company v. Glenn Coal Company, 57 App. D. C. 268, 20 F.(2d) 284, and the facts therein stated, although the appellant here was a party to the case and the other party, the Black Band Consolidated Coal Company, was named as one of the defendants in this case, because the decision reported is the decision of another federal court. Assuming, without deciding, that the objection is well taken so far as the doctrine of judicial notice is concerned, we cannot accept the view that we must disregard the fact of the cancellation of the mark which has been expressly admitted to be true by counsel for the appellant in open court here. It is one of the essential functions of the judicial process to determine the law applicable to established facts and there is no necessity to invoke the doctrine of judicial notice with regard to a relevant and indeed controlling fact which is freely admitted by counsel in argument. The admission of this fact in this case is tantamount to an admission that the case as stated in the declaration cannot be maintained. It was stated by counsel for the appellant that the omission from the declaration of the fact of cancellation of the trade mark was probably due to inadvertence of the pleader but this seems hardly an adequate explanation in view of the nature of the subject matter. It seems rather more reasonable to infer that the fact was omitted from the declaration in order to avoid the application of the statute of limitations. In view of the admission of the fact we feel obliged to consider it in determining the legal effect of the declaration, especially as there is no express affirmative allegation on the point contained in the declaration. And so considered, it is apparent that the declaration does not allege acts of the defendants within five years prior to the commencement of the suit

which could fairly be regarded as the proximate cause of the plaintiff's alleged damage.

It is contended by appellant's counsel that, on the point of limitations, the date of the affirmance of cancellation by the Court of Appeals of the District of Columbia (May 26, 1927), fourteen days after five years prior to the commencement of the suit, rather than the cancellation itself by the Commissioner of Patents, more than five years prior to the suit, should be regarded as the effective date. But we are unable to accept this view because we are referred to no provision of law which has the effect of suspending or superseding the cancellation by the Commissioner of Patents pending appeal. It is also contended by counsel for the appellant in a brief filed after the oral argument when these questions were raised, that the effect of the alleged wrongful registration and the defendants' claims thereunder should be considered as having continued in their effect on the trade for some indefinite time after the actual cancellation. But even if this could be assumed, the nature of the plaintiff's declaration is wholly inapplicable to such a situation.

We conclude the judgment of the district court must be and it is hereby

Affirmed.