## TWIN PORTS OIL CO. v. PURE OIL CO. et al.

### No. 620 Civil.

District Court, D. Minnesota, Fourth Division.

July 21, 1942.

150

Ernest A. Michel and Davis, Michel, Yaeger & McGinley, all of Minneapolis, Minn., for plaintiff.

David T. Searls, of Chicago, Ill., C. A. Taney, Jr., of Minneapolis, Minn., Vinson, Elkins, Weems & Francis, of Houston, Tex., and Fowler, Youngquist, Furber, Taney & Johnson, of Minneapolis, Minn., for defendants Pure Oil Co., Sinclair Refining Co., Shell Oil Co., Inc., Phillips Petroleum Co., Socony-Vacuum Oil Co., Inc., Skelly Oil Co., Continental Oil Co., and Cities Service Oil Co.

Buell F. Jones, Weymouth Kirkland, and David Fisher, all of Chicago Ill., F. H. Stinchfield and Stinchfield, Mackall, Crounse & Moore, all of Minneapolis, Minn., for Standard Oil Co. (Indiana).

NORDBYE, District Judge.

At the hearing, the Court stated orally that the motions would be denied as to all parts thereof except with reference to Paragraphs XIX, XXI and XXII of the complaint, and motions with respect thereto were taken under advisement. These paragraphs refer primarily to the damages which plaintiff claims to have sustained as a result of the alleged conspiracy. They read as follows:

"XIX. That all of the acts, agreements, and conspiracies herein alleged were done and performed contrary to and in violation of the laws of the United States, and, particularly, the Sherman Anti-Trust Act aforementioned; that but for the actions, wrongful doings and conspiracy of the defendants, as herein alleged, plaintiff could, and would, have been able to have received, and would have received, an average of approximately $3\frac{1}{2}$ cents per gallon additional margin or profit over and above the margin it did receive, for each gallon of gasoline handled by it during the period herein mentioned, and that plaintiff would have received such additional sum or margin but for the unlawful interference by defendants with the normal course of business and trade and the unlawful interference with plaintiff and the preventing of plaintiff from handling its business on the basis which it could and would have been able to do but for said conspiracy."

"XXI. That for many years previous to the conspiracy herein alleged plaintiff was doing a substantial and profitable business, but that during the period of said conspiracy and because thereof, plaintiff's profits were caused to decrease and dwindle and plaintiff's business was caused to reach such a state that it sustained losses and plaintiff was thereby and because of such conspiracy forced out of business to its damage as herein alleged.

"XXII. That previous to the year 1931, plaintiff did not sell gasoline or operate as a jobber under contracts similar to the contract of April 1, 1933, and that previous to that time defendants were not engaged in a conspiracy to regulate margins and to require uniform contracts and to do the things alleged as a conspiracy herein, and that during said period plaintiff was able to, and did, make fair and reasonable margins and profits in the purchase of gasoline from defendant, Pure Oil Company, and in the sale thereof, and that but for the conspiracy herein alleged plaintiff could, and would have, continued to make such fair and reasonable profits, but that such conspiracy prevented plaintiff from so doing, and that plaintiff, but for such conspiracy, would have been able to have entered into contracts enabling it to make such fair and reasonable profits."

The movants have summarized the grounds set forth in their motion with respect to these paragraphs as follows:

1. That plaintiff be required to state how it would have received an average of approximately 3½ cents per gallon additional margins over and above what it did receive, and what acts or conduct of these defendants prevented plaintiff from receiving said additional margins.

2. That plaintiff be required to state how, in what manner, and by what acts of the defendants the plaintiff's profits were caused to decrease and dwindle.

3. That plaintiff be required to state in what ways its contracts previous to the year 1931 varied from the contracts thereafter and how said alleged variance affected plaintiff's margins and profits.

As I understand plaintiff's theory of recovery as set forth in the complaint and as explained by plaintiff's counsel at the time of the oral argument, it is substantially as follows: This claim arises out of the conspiracy charged against these defendants by the Government in the so-called Madison Case No. 2. This conspiracy is separate and distinct from the one involved in Madison Case No. 1, which situation was the subject of a civil action by this plaintiff against certain defendants and reported in 8 Cir., 119 F.2d 747. In the case at bar, plaintiff urges that, previous to the year 1931, and continuing until the year 1936, it sold and delivered gasoline manufactured and produced by the defendant Pure Oil Company under an exclusive contract under the terms of which plaintiff agreed to purchase and sell certain petroleum products manufactured and produced by the defendant Pure Oil Company and under said contracts it became the sole and exclusive agent for the sale of gasoline in the Duluth area; that for the years 1931 to April 1, 1936, a contract was entered into between plaintiff and the Pure Oil Company wherein it was provided in substance that the price of gasoline should be "the average spot market price determined by taking the prices for like materials published daily in Platt's Oilgram, Tulsa edition, and the Chicago Journal of Commerce, adding together the prices of said gasoline carried in such publications, using minimum and maximum prices where such are carried, and dividing the total sum of such prices by the number of prices so added together, and the quotient so obtained f. o. b. Group Three Oklahoma plus all rail rate in force on date of shipment to destination will be the spot market price."

The contract during said years, that is, from 1931 to 1936, contained a provision for a guaranteed margin to the jobber of 5 to 5½ cents on the gasoline sold by said jobber. It is alleged that plaintiff was obliged to enter into this contract or lose its franchise as a jobber of Pure Oil products; that at or about the time the first contract in such form was presented to the plaintiff, there was a conspiracy and combination among these defendants and each of them, wherein by concerted action they conspired (1) to and did regulate, restrict, fix and make uniform the guaranteed margins which were provided in said contract; (2) to and did make uniform the contracts and the terms and conditions thereof to all jobbers, thus eliminating, restricting and suppressing competition among the defendants in soliciting jobbers' accounts and unlawfully regulated and restricted the jobbers in competition with each other and with them in the sale of gasoline to retail dealers or directly to consumers; (3) to and did make uniform the practices and policies with respect to jobbers and did adopt uniform and arbitrary rules and practices in their dealings with or affecting jobbers in the sale of gasoline, and did require jobbers to deal exclusively with one refinery, and that in doing so defendants unlawfully eliminated and restricted and suppressed competition among themselves in their practices and policies affecting jobbers and in the solicitation of jobbers' accounts and in the sale of gasoline to jobbers, all of which unlawfully de-

stroyed the ability of said jobbers to compete with them and with each other in the sale of gasoline to retail dealers or directly to consumers.

While the allegations with reference to the conspiracy and the nature thereof are somewhat indefinite, nevertheless, the defendants are fully informed as to the nature of the charges, in that in substance, at least, they constitute the same charges which were involved in Madison Case No. 2. In the paragraphs now under consideration, with reference to defendants' motion to make more definite and certain, it will be observed that plaintiff seeks to assert the damages which it sustained as a result of this conspiracy. In brief, it urges that were it not for the unlawful conspiracy, it would have received approximately 3½ cents additional margins for each gallon of gasoline sold during the period from 1931 to 1936; that prior to the conspiracy, it enjoyed a substantial and profitable business, but as the result thereof, its profits were caused to decrease and dwindle, and were it not for the conspiracy, it would have continued to make fair and reasonable profits, in that it could have entered into contracts enabling it to make such fair and reasonable profits.

At the outset, it must be recognized that, in every violation of the Sherman Act, there is no legal or logical inference that someone has sustained recoverable damages in a civil action. A conspiracy under the Act may afford the Government the right to injunction or to the prosecution of criminal proceedings, but it does not necessarily follow that everyone who did business with the conspirators during the period were damaged, so as to enable them to recover in a civil proceeding. Every well-considered decision recognizes that the fact of damage must be established by clear and satisfactory evidence, while the amount of damage may be approximated if the fact of damage appears with reasonable certainty and definiteness. Palmer et al. v. Connecticut Railway & Lighting Co., 311 U.S. 544, 61 S.Ct. 379, 85 L.Ed. 336; Calkins v. F. W. Woolworth Co., 8 Cir., 27 F.2d 314; Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544; Twin Ports Oil Co. v. Pure Oil Co., 8 Cir., 119 F.2d 747. In view, therefore, it would seem that a complaint under the Act should set forth with reasonable definiteness the facts from which damages are logically and legally inferable. See Keogh v. Chicago & N. W. Ry. Co., 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183. The pleader in the instant case contents himself by alleging that, prior to the conspiracy, the plaintiff enjoyed a favorable and lucrative business; that after the conspiracy its business markedly decreased and dwindled. He asserts that were it not for the conspiracy, plaintiff would have obtained an additional 3½ cents margin on the sale of each gallon of gasoline. It seems clear that the provision with reference to guaranteed margins has nothing to do, and could have nothing to do, with plaintiff's loss of profit. Such provision is for the jobbers' benefit. There is no allegation that the contract, prior to the conspiracy, had any guaranteed margins. In fact, it was recognized at the oral argument that the contract prior to the conspiracy contained no provision with reference to guaranteed margins, nor is there any allegation or statement in the complaint that the guaranteed margins in the contract entered into between the plaintiff and the Pure Oil Company would have been higher in absence of the conspiracy. Whether the combination to make uniform the provisions with respect to guaranteed margins is a violation of the Sherman Anti-Trust Act, 15 U.S.C.A. § 1 et seq., does not give rise to any presumption that anyone sustained damages by reason of unlawful combination in that regard. Without more, it establishes no causal connection between the wrong and the conclusion of damage which is alleged by the pleader. But it is asserted that the contracts are uniform as to practices and regulations. However, it does not appear from any statement of fact or any reasonable inference to be adduced therefrom that such uniformity could cause any decrease in profits, or that it had any bearing whatsoever on the ultimate spread between the sum that the jobber paid for the gasoline and that which he received from his dealer or consumer. Plaintiff does not allege the manner in which the selling price to jobbers was determined under the contract in existence prior to 1931. Finally, there is the allegation that the jobbers could not compete among themselves or with the defendants in the sale of gasoline, but were obliged to deal exclusively with one refinery. However, there are no facts or circumstances set forth in the complaint which tend to show any causal relationship, in so far as damages are concerned, between the acts and conduct of the defendants in this re-

gard and the conclusions with reference to the injury sustained. It may be observed that there are no provisions in the new contract which restrict the margins to the jobber, nor is there any showing in the complaint that the base price to the jobber was computed in any different way by reason of the conspiracy than the computation of the old base price prior to the conspiracy.

The mere fact that plaintiff enjoyed greater margins under the old contract does not establish that the decrease was the proximate result of the illegal conspiracy. The gross margins which, the jobber enjoys, generally speaking, is the difference between the price it pays to the refinery and that which it receives from the retailer or consumer, as the case may be. Many causes, economic and others, may have affected the spread other than the illegal acts of these defendants. Possibility or conjecture as to the causal connection between the wrong and the injury is insufficient. However, it is urged that the existence of the conspiracy, coupled with good business prior thereto and decreased business subsequent thereto, is sufficient to make out a claim for damages. Manifestly, this view cannot be sustained. Westmoreland Asbestos Co. v. Johns-Manville Corp., D.C., 30 F.Supp. 389; Alexander Milburn Co. v. Union Carbide & Carbon Corp., 4 Cir., 15 F.2d 678; Rice v. Standard Oil Co., C.C., 134 F. 464; Twin Ports Oil Co. v. Pure Oil Co., supra; H. E. Miller Oil Co. v. Socony-Vacuum Oil Co. et al., D.C., 37 F.Supp. 831; Leonard v. Socony-Vacuum Oil Co. et al., D.C., 42 F. Supp. 369. But, in the alternative, plaintiff urges that the existence of a conspiracy, coupled with favorable business before and decreased profits afterwards, will furnish a basis for expert testimony as to the damages sustained and that, through such testimony at the trial, the causal connection will be established. But how can any expert express any such opinion on the basis of the facts alleged in the complaint? There is no claim that the basic price charged by the refinery to the jobber was manipulated or changed by reason of the conspiracy. In so far as the complaint is concerned, the spot market price referred to in the contract after 1931 did not differ from the method by which the price to the jobbers was determined before the conspiracy. The stifling of competition may affect the jobbers' right to deal freely with refineries and obtain more favorable terms in its contract. But plaintiff does not aver that the contract entered into with the Pure Oil Company after the conspiracy was less favorable than the one which was consummated before the conspiracy. In fact, the later contract contains provisions more favorable because it contains a guarantee of margins which was absent in the former jobber agreement. There must be some basis or foundation for the contention or inference that a more favorable contract could have been obtained if the jobbers were not restricted to one refinery. Plaintiff does not aver that it could have, or would have, obtained a more favorable contract with any specified refinery in absence of the conspiracy. What, then, is the factual basis alleged in the complaint upon which an expert can express any opinion as to the causal connection between the wrong and the claimed injury? Without additional facts and circumstances, his opinion would be sheer guesswork and in the realm of speculation and conjecture. It would seem that this analysis illustrates the necessity for the plaintiff to state additional, ultimate facts in the complaint in order to establish the causal connection between the wrong and the injury. What the defendants are seeking herein is not proof or evidence, but a mere amplification of the allegations of ultimate facts which are contained in the bill.

It is urged that, under the new rules, simplified pleadings are authorized and that the mere statement that the wrong resulted in damage is sufficient, without more. Generally, it may be stated that that seems to be the spirit of the new rules, and the construction which has been given to 12(e), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. But where suits are instituted under the Sherman Anti-Trust Act, and especially where they involve large sums of money and will in all probability consume the time of the Court and counsel for a long period, it will be found that courts generally recognize the desirability, if not the necessity, of requiring the pleader to establish in the complaint a statement of sufficient facts regarding the causal connection between the wrong and the damage, so as to enable the defendant to be apprised of the legal theory which will be urged at the trial of the case and thus be able to frame responsive pleadings thereto. Westmoreland Asbestos Co. v. Johns-Manville Corp., supra; Alexander

Milburn Co. v. Union Carbide & Carbon Corp., supra; H. E. Miller Oil Co. v. Socony-Vacuum Oil Co., supra; Leonard v. Socony-Vacuum Oil Co., supra; Louisiana Farmers' Protective Union, Inc., v. Great Atlantic & Pacific Tea Co. et al., D.C., 40 F.Supp. 897; Edward Lowe et al. v. Consolidated Edison Company, Inc., et al., D. C., 1 F.R.D. 559. In the latter case, Judge Leibell, of the Southern District of New York, expresses the following view at page 562 of 1 F.R.D.: "Under Rule 12(e), Federal Rules of Civil Procedure [28 U.S.C.A. following section 723c], it is provided that a bill of particulars becomes a part of the pleading which it supplements. Accordingly, the particulars 'to enable a party to prepare a responsive pleading or to prepare for trial', are determined with that provision in mind. A contrary view would violate that purpose of the Rules which seeks to obtain short and concise statements of the facts upon which the pleader relies. This does not mean, however, that defendants will be forced to answer general allegations and conclusions, rather than facts, or that the courts will treat the pleadings in all types of actions in the same manner. In cases founded upon the Anti-Trust Act which are dependent for final relief upon the conformation of numerous facts to such flexible concepts as monopoly, interstate commerce, restraint of trade, etc., which are of serious and immediate concern to commercial enterprise, I think that the court should require from plaintiffs in their pleading a statement of facts sufficiently complete to mitigate the dangers that might result if these cases proceeded upon the shaky foundation of a vague and somewhat indefinite complaint. United States v. Griffith Amusement Co., D.C., 1 F.R.D. 229. I am, therefore, inclined to consider liberally defendants' requests for particulars of plaintiffs' claim * * *."

■ Consequently, it would seem that, in framing their answer, these defendants are entitled to be informed as to how plaintiff would have received 3½ cents more for each gallon sold in absence of the existence of a conspiracy and how any variance between the old and new contracts affected plaintiff's margins and profits. This would not be pleading evidence, but the complaint would then set forth the fact of damage,

not as a conclusion of the pleader, but by facts from which damages reasonably appear or are logically and legally inferable. This view as to the sufficiency of the pleading does not mean that the amount of damage plaintiff sustained should be pleaded with more definiteness than now appears, but that the fact of damage—the causal connection between the wrong and the injury—should appear by properly pleaded facts and circumstances rather than the conclusions of the pleader. It may be urged that this information may be obtained by discovery or interrogatories, but I gathered from the arguments and statements of counsel that such quest under the suggested procedure would be futile. The legal theory of the causal relationship is not a fact of admission that can be obtained from laymen. If plaintiff cannot establish such causal connection which would permit recovery, then it is desirable that all parties be advised promptly of their status and rights before entering upon a long and protracted trial.

It is therefore ordered that, in harmony with the views herein expressed, Paragraphs XIX, XXI and XXII of plaintiff's complaint shall be recast and made more definite in this:

That plaintiff be required to state facts which establish or from which it logically and legally can be inferred that, due to illegal acts and conduct of the defendants (1) it received by way of margins 3½ cents per gallon less for each gallon of gasoline sold during the years in question; (2) that its profits decreased from 1931 to 1936; (3) that the differences in the contracts between the parties previous to the year 1931 and thereafter affected plaintiff's profits and margins.

It is further ordered that within 30 days after the filing of this order, plaintiff restate and recast said paragraphs as herein required and that defendants' time for answering, pleading, or otherwise moving with respect to plaintiff's complaint be extended until 20 days after the service of said amended complaint.

It is further ordered that said motions be and the same hereby are in all other respects denied.

Exceptions are reserved to each and all parties.