CHARLES RUBENSTEIN, Inc., et al. v.
COLUMBIA PICTURES CORP.

Civ. A. No. 4332.

United States District Court
D. Minnesota, Fourth Division.

June 3, 1953.

Lee Loevinger, of Larson, Loevinger, Lindquist, Freeman & Fraser, Minneapolis, Minn., for plaintiffs.

Mandt, Torrison and Bundlie, Kelley, Finley & Mann, St. Paul, Minn., for defendant Minnesota Amusement Co.

JOYCE, District Judge.

This is a motion by plaintiffs to strike the matter asserted as a counterclaim by defendant Minnesota Amusement Company in its amended answer and counterclaim on the ground the same constitutes an insufficient defense, is immaterial, impertinent and scandalous, and to dismiss the same as failing to state a cause of action. Plaintiffs also move for a more definite and certain statement, such motion being conditioned upon denial of the former motion.

The plaintiffs, partners, and the predecessor corporation before them, owned and operated the Hollywood Theatre in the City of Minneapolis. The main action herein is by the plaintiffs against the principal motion picture film distributing organizations and the Minnesota Amusement Company and the complaint therein alleges that the said distributors conspired among themselves to restrain trade in that with respect to the rental of films for exhibition they combined to establish a so-called circuit run, that is, a run or playing position which was available only to theaters operated by one of several large exhibition circuits, the defendant Minnesota Amusement Company being one of such circuits. Such conspiracy and restraint of trade is alleged to have been the subject of a suit by the United States as described in the pleadings.

The claim asserted in the present case is that shortly after the plaintiffs constructed and commenced operation of the Hollywood Theatre, the competitive Arion Theater, operated by defendant Minnesota Amusement Company, obtained a so-called circuit run or playing position seven days in advance of any available to the Hollywood Theatre; that such advantageous playing position was maintained until some time in 1952 and as a result the plaintiff's Hollywood suffered a loss of patronage and plaintiffs were damaged thereby.

The several defendants interposed their answers denying generally the existence of a conspiracy, but the Minnesota Amusement Company also pleaded a counterclaim alleging in general terms that the plaintiffs conspired and combined to injure the defendant and the defendant suffered damage thereby. Upon motion to dismiss or to make more definite and certain the defendant was given leave to amend or replead and has done so, its counterclaim as now pleaded being the object of attack on the present motions.

As now pleaded, the counterclaim alleges hypothetically that "if" the defendant distributors conspired as alleged in the complaint, then the plaintiffs joined and participated in such conspiracy. It is further alleged that plaintiffs as owners of the Arion Theater leased the same to Minnesota Amusement Company under a long-term lease and the Minnesota Amusement Company operated the same profitably on a comparatively late run or availability of 112 days after first exhibition in downtown Minneapolis. Thereafter plaintiffs constructed the Hollywood Theatre in the same market area and procured from the commencement of its operation of that theater an advantageous clearance and run on an availability of 56 days after first run. It is then stated that as a result of such action the defendant was compelled to renovate and improve the Arion Theater to the benefit of the plaintiffs as owners, for the purpose of obtaining an earlier and more competitive clearance or availability of films; that as agreed upon with plaintiffs such clearance of 49 days was obtained, but that income from operation of the theater was diminished by reason of the resulting higher cost of film rental on the new basis.

It is argued that the counterclaim is defective, first because the alleged conspiracy is pleaded hypothetically, not positively, and second because it fails to set out facts demonstrating the causal connection between the claimed conspiracy and the resulting damage.

■ As to the first contention counsel for plaintiff concedes he has found no case precisely in point, and the court's research has disclosed none. However, rule 8(e), Federal Rules of Civil Procedure, 28 U.S. C.A., expressly permits alternative or hypothetical pleading in either a claim or a

defense. Here one alternative, the denial of a conspiracy, is set out as a defense and the other alternative, the existence of a conspiracy, is set out separately as a counterclaim. The apparent purpose of the rule in permitting flexibility and simplicity in pleading is demonstrated in the Forms appended to the Rules. See particularly the second defense set out in Form 20. Accordingly, it appears that the present pleading should stand as against that objection, plaintiff's contention that it will be impossible to make its answer to such hypothetical allegation appearing to be more fancied than real.

 The second objection, a claimed lack of pleaded facts demonstrating a causal connection between the alleged conspiracy and resulting damage, poses a more difficult problem. While it appears that the Rules permit and are intended to encourage a short and simplified statement of the facts of a claim, it is true that a claim based on conspiracy and restraint of trade which may involve a lengthy and expensive trial should set forth with reasonable definiteness the facts from which damages are to be inferred in order to adequately apprise the opposing party of the legal theory to be urged upon the trial. See Twin Ports Oil Co. v. Pure Oil Co., D.C., 46 F.Supp. 149. Every controversy over the meaning and effect of a pleading is more or less sui generis and the citation of cases is of little value. However, in the present case as distinguished from the case cited, it appears the pleading adequately apprises the plaintiffs of the legal theory upon which defendant is proceeding at least for the purpose of formulating its answer thereto, and they will not be prejudiced by being required to so answer. The fact that the court has grave doubts of the probability of the defendants being able to prove the facts and conclusions pleaded is not a basis for action by the court in ordering a dismissal. Louisiana Farmers Protective Union v. Great Atlantic & Pacific Tea Co., 8 Cir., 131 F.2d 419.

Plaintiff seeks, as an alternative to its motion to strike or dismiss, to have the counterclaim made more definite and certain as to some 20 particulars. This motion as to the same particulars was advanced against the counterclaim as originally pleaded prior to amendment. It appears that the amendment may have rendered the motion unnecessary as to some of those matters. As to the balance of the particulars sought it appears the pleading as now set out is not so vague or ambiguous that the plaintiffs cannot reasonably be required to frame a responsive pleading thereto. Rule 12(e), Federal Rules of Civil Procedure. The information sought may be obtained upon deposition or interrogatories, unlike the situation found in Twin Ports Oil Co. v. Pure Oil Co., D.C., 46 F.Supp. 149, where the information sought related to a legal theory of causal relationship only obtainable by requiring the recasting of the pleading.

Accordingly, all motions are denied.